481 A.2d 913

**Raymond F. KING, Sr., Appellant,**

**v.**

**Eleanor F. KING.**

Superior Court of Pennsylvania.

Argued Feb. 7, 1984.

Filed Aug. 24, 1984.

Frank Kroto, Jr., Erie, for appellant.

Donald W. Grieshober, Erie, for appellee.

Before BROSKY, OLSZEWSKI and JOHNSON, JJ.

BROSKY, Judge:

Appellant is the former husband of appellee. He contests the distribution of property ordered by the trial court in conjunction with the parties' divorce. Specifically he challenges the valuation of his pension plan, which was subject to equitable distribution, and what he claims was the failure of the trial court to take into consideration in making its distribution of marital property the fact that appellee had resided since the date of separation in the marital residence rent free.

Initially, though, appellant contends that another hearing should be conducted on the equitable distribution issue because of the failure of Judge Jiuliante to recuse himself from reviewing the Master's findings. Appellant concedes that after writing an opinion dated February 2, 1983, Judge Jiuliante did in fact recuse himself and another en banc panel reviewed the case. He argues, however, that this panel did not actually review the Master's findings but instead merely affirmed the previous order of Judge Jiuliante. We disagree.

The opinion of the court en banc issued on August 29, 1983 indicates that it relied not only on the previous opinion but also heard argument in July and considered the record made at the Master's hearing. The court wrote: "After careful review of the testimony presented at the Master's hearings, and with the benefit of the second en banc argument, we concur with the initial opinion of the court, and deny plaintiff's Motion for Reconsideration." While the August opinion did refer to Judge Jiuliante's previous opinion, we believe that the court en banc itself reviewed the evidence and we see no need for remand on this ground.

Turning to appellant's remaining claims, we note that we utilize an abuse of discretion standard of review in determining the propriety of property distribution. *Ruth v. Ruth*, 316 Pa.Super. 282, 462 A.2d 1351 (1983). We will not usurp the trial court's duty as factfinder nor will we adopt

guidelines or presumptions in addition to those set forth by the legislature. *Ruth v. Ruth, supra.*[1]

Appellant's primary contention is that the trial court erred in valuing the pension fund as of January, 1981. Instead, he argues that it should have been valued as of the date of separation in October, 1973 or the date of the filing of the divorce complaint in 1974.

Appellee, on the other hand, believes that the valuation of the pension plan gave the husband credit for the increased value between the date of separation in 1973 and valuation date in 1981 and urges us to affirm.

■ We conclude that only that portion of the pension attributable to the period commencing with the marriage and ending on the date of separation is marital property within the meaning of the Divorce Code.

We have based our decision on the terms of the Divorce Code which defines marital property as all property acquired by either party during the marriage with certain exceptions. *See* 23 P.S. § 401(e) which states in relevant part:

1. Appellee contends that appellant has waived the issues he presents to us. We do not agree.

Specifically appellee complains that appellant did not below: (1) raise an issue as to the increase in value of the pension plan after 1974; (2) raise an issue as to the fair market rental value of the residence occupied by appellee or; (3) raise an issue as to purchase by appellant of military time towards his pension. Nor, appellee argues, did appellant seek Judge Jiuliante's recusal. As to this last question we note that appellant did seek reconsideration of Judge Jiuliante's February 2, 1983 decision in response to which request the Judge recused himself.

As to the other assignments of error made by appellee we observe that appellant's dissatisfaction was not with the Master's Report, but with the trial court's disposition of appellee's exceptions to that report. Pa.R.C.P. 1920.55(c) in effect at the time of the hearings below, provided:

If exceptions [to the Master's Report] are filed, the court shall hear argument on the exceptions and enter an appropriate final decree. No exceptions may be filed to the final decree.

We conclude that appellant has not waived the issues he now argues and therefore proceed to the merits of the argument.

(e) For purposes of this chapter only, "marital property" means all property acquired by either party during the marriage except:

\* \* \* \* \* \*

(4) Property acquired after separation until the date of divorce, provided however, if the parties separate and reconcile, all property acquired subsequent to the final separation until their divorce.

The statute indicates that the Legislature did not intend that property acquired after separation be treated as marital property. That portion of the pension property that was acquired after the date of final separation should therefore not be subject to equitable distribution.

Mr. and Mrs. King, who were both 53 years of age at the time of the divorce hearing, were married in August, 1951 and separated in October, 1973 at which time Mr. King was employed, as he still is, by the Erie Police Department. He has been employed by the Department since April, 1956.

The marital property consisted primarily of the residence at 1120 West 41st Street, Erie, (valued in October, 1973 at $22,100 and in January, 1981 at $37,500) and appellant's pension which had not vested as of October, 1973, but was due to vest within a few months.

Appellant's pension plan is apparently considered to be both a contributory and non-contributory plan. By October, 1973 Mr. King had contributed $4,197.34 to the plan, by January, 1981, he had contributed another $5,389.92. The Master found the $4,197.34 to be marital property and awarded it to the husband.

Exceptions were filed to the Master's Report and the court reversed his proposed finding that the value of the pension was limited to the dollar amount contributed by appellant. Instead the court found that the pension had a value based on the likelihood of its being paid.[2]

2. Although he does not raise the question as a separate issue, appellant does suggest in the body of his argument that perhaps his pension fund is not subject to equitable distribution. He cites our opinion in

An actuary testified at the Master's hearing and his written report was entered into evidence. At the hearing the actuary, Randall M. Luzader, testified that in October, 1973 the value of the pension was $67,893. The witness explained that he reached that figure by considering Mr. King's vital statistics; the provisions of the pension plan; the form of benefits, eligibility to retire; the basic format; a cost of living adjustment; the discount factor and 1973 group annuity mortality rates. As the witness explained, he was not saying that Mr. King could withdraw $67,893 from the pension fund in 1973 (in fact he could at that time withdraw only his $4,197.34 contribution). Instead, the $67,893 figure represented what the actuary said was the financial equivalent to the stream of payment to which Mr. King was entitled at that time.

Mr. Luzader was asked what was his opinion of the value of the pension in January, 1981 but he did not answer because appellant's counsel objected and the Master said that he did not believe the testimony would be material.

In a written report prepared by Mr. Luzader for appellee's counsel, the attorney estimated the value of the pension in January, 1981 to $151,272. The court en banc used that figure in dividing the pension fund although our review of the record does not indicate that the report was ever actually admitted into evidence.

We believe the lower court erred in relying on facts not in evidence. Additionally, we have concluded that the method

*Young v. Young,* 320 Pa.Super. 269, 467 A.2d 33 (1983). In that case, however, we did not say that a municipal pension was not marital property, but that it was not subject to attachment. As we said, "Appellant must utilize other means, whether at law or in equity, to enforce such order."

We believe it is clear that the pension is marital property subject to equitable distribution and agree with the decisions of other jurisdictions that have so found. See e.g. *In re Marriage of Fairchild,* 110 Ill.App.3d 470, 66 Ill.Dec. 131, 442 N.E.2d 557 (1982), *Janssen v. Janssen,* Minn., 331 N.W.2d 752 (1973); *Jerry L.C. v. Lucille H.C.,* Del., 448 A.2d 223 (1982).

Moreover, the Divorce Code, 23 P.S. § 401(e) defines marital property as "all property acquired by either party during the marriage." None of the exclusions to the definition applies to pensions.

used by the court to divide the pension was faulty in that it utilized a present value in ordering a deferred payment.

The lower court made a determination of the present value of the pension and awarded a portion of that value to Mrs. King, although it ordered that actual payment would be deferred until the pension entered pay status.

The method used by the court involved multiplying the estimated present value ($151,272) by a fraction known as the "coverture fraction". The fraction represents that portion of the value of the pension that is attributable to the marriage. The numerator of the fraction is the total period of time the employee spouse was participant in the plan from date of marriage until date of separation, and the denominator is the total period of participation in the pension plan. The court found the numerator to be 19.67 years and the denominator 26.83, as of January, 1981. Therefore, the court found that .733134 of the value of the plan was marital property, since that is the portion of the value of the pension earned during marriage.

The trial court determined that the pension should be divided equally and therefore awarded to Mrs. King ½ of .733134 of $151,272.00 or $55,451. This amount was reduced by $12,750 which represents ½ of the net equity in the marital residence which had been awarded to the wife as an offset against the pension. Although $42,701.00 in marital property was thus awarded to Mrs. King, the court noted that there is no practicable way that Mr. King can pay that amount to his former wife. The court therefore ordered a deferred distribution to take place when Mr. King begins to receive his pension.

■ While we agree with the court's order of a deferred distribution, we would so order without assessing a present value to the pension. See Troyan, "Pension Evaluation and Equitable Distribution", 10 Family Law Reporter No. 4, Monograph No. 1, Nov. 22, 1983.[3] Mr. Troyan contends and

**3.** We recognize, as Mr. Troyan explains, that an order directing deferred payment raises risks. For example, if the employee spouse

we agree that when a deferred distribution is used, present value should not be employed because there are too many variables projected into the future for this calculation to have any merit. Instead, the "coverture" fraction is to be applied to the benefit when it enters pay status. We believe that this approach should be used in the present case where it is undisputed that there are insufficient assets to offset the pension immediately.

■ If the pension fund were to be divided between the parties at the time the equitable distribution order was entered, we would agree that the coverture fraction should be used in conjunction with the present value. As we have indicated earlier in this opinion, we agree further that in determining the number of years participation in the pension plan attributable to the marriage, the period should be computed from the date of marriage to the date of separation. We also would value the plan as of the date of the hearing, as the court did instantly. We would therefore multiply the coverture fraction by the estimated present value of the pension to find the present value of the entitlement which was acquired during marriage. For a discussion of the computation of present value see Troyan, "Pension Evaluation and Equitable Distribution", 10 Family Law Reporter No. 4, Monagraph No. 1, Nov. 22, 1983.

■ However, we have determined that in this case an immediate distribution of the value of the pension plan is not possible, given its disproportionate value in relation to the other marital assets. We therefore find that a present value calculation is inappropriate.

predeceases the non-employee spouse, the non-employee spouse stands to lose the entitlement. The trial court order sought to avoid this problem and the extent that its order complies with Federal law (see F.L.R. *supra* at 10 F.L.R. 3008), we support its efforts. The propriety of that part of the order is not, however, before us.

Nevertheless, while expressing a preference for an immediate offset and settlement of marital property claims under most circumstances, Mr. Troyan concedes that often a deferred distribution is necessary. This is so when, as is the situation in the instant case, the value of the employee spouse's pension far exceeds the value of other marital property. (See 12 F.L.R. 3006).

■ If the non-employee spouse is to wait until the pension enters pay status to receive her share of the marital property, she should not receive only that portion of the benefit that it seemed likely she would receive at an earlier date. Instead she should receive that portion of the actual payment attributable to the period commencing with the marriage and ending on the date of separation.

See also Skoloff, "How to Evaluate and Distribute Employee Benefits in a Divorce." *The National Law Journal,* February 13, 1984. (Present value is estimated to be the amount of monies the employee would take in return for giving up his right to an unknown number of future payments.) Here future payments will be made and present value is therefore inappropriate.

We note with approval the comments of the Illinois Appellate Court in *In re Marriage of Fairchild, supra* 110 Ill.App.3d at 475, 66 Ill.Dec. at 134, 442 N.Ed. at 560, in which the court noted:

[R]eserving jurisdiction over the future benefits and effecting a subsequent division of the actual monetary benefits had the dual advantage of allocating equally between the parties the risk that the rights may never vest [or enter pay status] and enabling the court to better determine the actual proportion of future benefits that accrued to each party during the marriage.

See also *Janssen v. Janssen, supra.*

Having determined that a deferred distribution is to be effectuated when appellant's pension enters pay status, we are left to respond to appellant's remaining claims.

■ Mr. King contends that the trial court erred in determining how much of his pension is attributable to the period of his marriage insofar as it included in that period years of service purchased by him.

Appellant commenced his employment with the Erie Police Department in 1956 and by the date of separation had served 17.583 years. However, in July, 1973 he purchased twenty-five months of military service to be used in comput-

ing his years of service with the Police Department for pension purposes.

As appellant notes, there is no evidence in the record as to whether the military time was served prior to or during the marriage. However, we have concluded that in either event the purchased time is marital property.

Section 401(f) of the Divorce Code provides that there is a presumption that all property acquired during marriage is marital property, although that presumption can be overcome by a showing that the property was acquired in certain excepted ways listed in Subsection (e) of that Section. No such showing was made in this case and we therefore find no error in the lower court's inclusion of the military service time in its calculation of appellant's years of service during his marriage. See *Gee v. Gee,* 314 Pa.Super. 31, 460 A.2d 358 (1983).

■ Appellant also argues that the lower court erred in its division of marital property insofar as it failed to consider that Mrs. King had lived in the marital residence rent free since the date of separation. In support of this argument Mr. King cites *Gee v. Gee, supra,* in which this court refused to find that the trial court had abused its discretion in requiring a husband to pay his former wife one-half of the estimated fair market rental value of the marital home for each month he resided there after she left.

As we said in *Gee, supra,* 314 Pa.Superior Ct. at 35 n. 2, 460 A.2d at 360 n. 2, the trial court has the duty to dispose of existing property rights of the parties after considering all relevant factors. We concluded that the court had not abused its discretion in ordering the rental payments since they compensated the appellee for her rights and interests in the land.

We believe that the lower court in the instant case gave due consideration to appellant's payment of the mortgage on the home when it denied alimony to Mrs. King. Moreover, Mr. King received credit for the increased net equity in the home in the division of the proceeds of the home.

Although we do not find that the lower court erred in its weighing of this factor, we do believe that given our holding as to the pension fund, that the court may wish to reconsider the order directing that Mrs. King retain all of the proceeds from the sale of the house as an offset to what the court found to be her share of the pension fund. Therefore, we vacate the order and remand for proceedings not inconsistent with this opinion. We realize that the trial court may still determine that the house should be awarded to Mrs. King, but since we have reversed the order as to the pension plan we believe we ought to give the court an opportunity to reconsider its order in view of our decision. See *Estep v. Estep,* 326 Pa.Super. 404, 474 A.2d 302 (1984).

Order vacated and case is remanded for further proceedings. We do not retain jurisdiction.