559 A.2d 535

**Francis P. MANTELL, Appellant**

v.

**Eiko MANTELL.**

Superior Court of Pennsylvania.

Argued June 13, 1988.

Filed May 11, 1989.

*First Pennsylvania Bank N.A.*, 250 Pa.Super. 385, 378 A.2d 990 (1977). Thus, the complaint as a whole should not have been dismissed.

Charles D. Vance, Jr., Mechanicsburg, for appellant.

Samuel L. Andes, Lemoyne, for appellee.

Before CIRILLO, President Judge, and WIEAND and DEL SOLE, JJ.

CIRILLO, President Judge, delivers the opinion of the court affirming the divorce decree, the award of alimony and the equitable distribution order, in which WIEAND, J., joins. DEL SOLE, J., files a concurring and dissenting opinion.

WIEAND, J., files a separate opinion, in which he delivers the majority view on the issue of counsel fees, reversing that part of the trial court's order awarding out of state

counsel fees, in which DEL SOLE, J., joins. CIRILLO, President Judge, files a dissenting opinion.

CIRILLO, President Judge:

This is an appeal challenging various rulings on exceptions to an order of the Court of Common Pleas of Cumberland County granting a divorce, equitably distributing marital property, and awarding alimony and counsel fees. We vacate only that portion of the order directing payment of counsel fees to Mrs. Mantell's Texas counsel.

The parties were married in Mrs. Mantell's native country, Japan, in 1964. In 1982, Mr. Mantell, appellant here, instituted a Section 201(d) divorce action in Pennsylvania, where both parties resided. Appellee, Mrs. Mantell, responded, denying that the marriage was irretrievably broken or that the parties had been separated for three years. She also raised claims for economic relief, including counsel fees. Mr. Mantell later moved to Texas where, in 1983, he filed another divorce action. That action initially proceeded to a default judgment of divorce but was eventually dismissed by the Texas court in 1986 for lack of subject matter jurisdiction.

In 1985 Mrs. Mantell, who remained in Pennsylvania, successfully filed for the appointment of a master. A hearing, not attended by Mr. Mantell or his counsel, was held several months later. The master's report, recommending the granting of the divorce and the distribution of the property, was filed in October of 1985. Exceptions by both parties followed.

The trial court heard argument on these exceptions in July of 1986 and remanded the matter to the master for consideration of Mrs. Mantell's claims for alimony and alimony pendente lite, issues on which the master's report had been silent. Both parties subsequently requested that the court discharge the master and hear the remaining issues.

Following a hearing in August of 1987, the court issued its October 28, 1987 order and opinion which contained

findings of fact and which granted the divorce, distributed the property and awarded alimony and fees. Both parties filed for post-trial relief and, except for correcting the weekly net income attributed to Mr. Mantell (the court had erroneously picked up a bi-weekly figure), its October 28th order was reconfirmed as the final order in the case. This appeal followed.

Appellant raises five issues for our review:

1. Did the court err in failing to lower alimony after correcting Mr. Mantell's weekly net income, thereby reducing it by half?

2. Did the court err in including as marital property subject to equitable distribution realty in Costilla County, Colorado?

3. Did the court err in not designating a percentage of Mr. Mantell's pension to which Mrs. Mantell is entitled?

4. Did the court err in awarding fees for Mrs. Mantell's out-of-state counsel, such an award being unsupported on the record?

5. Did the court err in not addressing or discussing Mr. Mantell's argument # 4 above when disposing of Mr. Mantell's exceptions to the October 28, 1987 order?

With respect to the first four of these issues, appellant asks that we "correct the error and modify" the trial court's order; he asks that we reverse and remand for explanation as to issue number five.

■ Mr. Mantell first argues that it was an abuse of discretion not to reduce the alimony award when the court realized its error in finding Mr. Mantell's net weekly income. He concedes that the evidence supports an award of alimony, but asserts that the court abused its discretion in setting the amount. He reads the court's order and opinion of October 28th as relying most heavily on the disparity of income between the parties as the basis for its alimony award and finds unsatisfactory its statement, made on consideration of his exception, referring to the other relevant factors at §§ 102(a)(6) and 501 of the Divorce Code in

support of its decision to leave the alimony as originally awarded.

Mrs. Mantell points out that the court's original finding of fact regarding Mr. Mantell's annual income used the correct figure and that the trial court's discussion in its opinion uses the correct figures for the parties' incomes. Additionally, she notes, as did the trial court, that this was only one of at least fourteen factors considered in making the award. She also observes that the trial court was correct in using annual income figures, consideration of a net weekly figure not being reflective of Mr. Mantell's true ability to pay alimony since the tax impact of paying alimony is not reflected in it. She therefore suggests that the one error in stating weekly income was more typographical than substantive. Mrs. Mantell also argues that, since the trial court had the opportunity to correct the alimony figure, so long as the record supports the award, there is no abuse of discretion.

The trial court took into consideration a number of factors in making the alimony award, most tellingly Mrs. Mantell's meager education and limited facility with the English language, the parties' respective assets and liabilities, and their prospects for future income generation. The award was not based on a percentage of Mr. Mantell's income, and, therefore, Mr. Mantell's argument that after the correction of the net weekly income figure, not changing the dollar amount of the alimony award results in an award of a much larger proportion of his income, is of no merit. The trial court adequately addressed the facts of this case and the elements of our Divorce Code in setting the amount of alimony and gave due consideration to Mr. Mantell's ability to pay. It did not abuse its discretion in refusing to alter the alimony amount because of its initial error in stating Mr. Mantell's net weekly income. The record supports the award made and we will not disturb it.

■ Mr. Mantell next contends that the evidence, specifically his testimony at the August hearing, showed that the property in question, a number of undeveloped lots in

Colorado, was held as a gift for the parties' son, having been purchased specifically for that purpose in 1971. He argues that there was no evidence to the contrary before the court and that it was, therefore, error to find this property subject to equitable distribution. Mrs. Mantell points out that the deeds were in joint names and argues that the trial court's ruling was correct in that Mr. Mantell did not meet his burden of proof to rebut the presumption of marital property. The trial court pointed to the evidence of record showing joint title, citing 23 P.S. § 401(e) which defines marital property as "all property acquired by either party during the marriage." The court concluded that it had distributed the property in accordance with the legislative intent expressed in 23 P.S. § 102(a)(6)—to do economic justice between the parties. We find the trial court's decision on this issue to be unassailable.

■ Mr. Mantell next complains that the deferred distribution method of pension valuation chosen by the court was improper. Because the trial court found that Mr. Mantell's pension was too speculative to determine a coverture fraction, the court elected to retain jurisdiction to allocate the benefits at the time of retirement. Mr. Mantell concedes that this method of distributing the pension is viable and allowable under the law, yet charges error in the trial court's failure to fix a formula by which the pension will eventually be divided. He argues that the court, if it truly wished to end the legal entanglement between these parties, would have set a definite percentage of Mr. Mantell's pension to which Mrs. Mantell is entitled. He cites *Braderman v. Braderman*, 339 Pa.Super. 185, 488 A.2d 613 (1985), which sets out alternate methods for distribution of pensions and observes that immediate offset method has the advantage of contemporaneous finality, as support for this proposition. Mrs. Mantell endorses the trial court's position that it had too many variables and too few definite facts before it to calculate either the numerator or the denominator of the coverture fraction necessary to a determination of the proportion of retirement benefits attributable to the

marriage. She submits, and we agree, that the trial court properly applied the law to the facts of this case. *See Flynn v. Flynn*, 341 Pa.Super. 76, 491 A.2d 156 (1985) (deferred distribution method preferable given speculative nature of pension).

The evidence shows that it was not possible to know, as of the hearing date, either the numerator representing Mr. Mantell's total time in the pension plan during the marriage (he still had the opportunity to "buy back" some lost time), or the denominator representing the total time he participated in the plan (he was still active with no plans for retirement). Both of these numbers are essential to setting up the coverture fraction. *King v. King*, 332 Pa.Super. 526, 533, 481 A.2d 913, 916 (1984). Therefore, no matter how much the court might have wished to end the parties' legal wrangling, it was not possible for it to determine a coverture fraction to be applied to the pension for immediate valuation. We note that even though the master's report fixed a numerator for the fraction [1], it determined that the pension, because of the unknown total length of service, could not be subject to immediate distribution. Appellant's argument is without merit in that the immediate offset method of pension evaluation was not appropriate in this case. The trial court was correct in so finding and in using the alternative "reserve jurisdiction method." *See Braderman, supra.*

Mr. Mantell's final arguments on appeal challenge the award of $3,881.25 in counsel fees and charge that the trial court failed to address this argument, raised by exception. He claims that a remand is necessary for an explanation on the record of the trial court's action. Before turning to a consideration of those arguments,[2] we note that what fol-

1. This numerator assumed that Mr. Mantell would buy back his lost time in the plan. The trial court declined to adopt this figure as it judged it to be improper for the court to force Mr. Mantell to buy back the time.

2. In addressing this issue, I would not decide whether the trial court's order was proper insofar as it ordered payment of fees charged by out-of-state counsel in defense of the jurisdictionally defective Texas

lows does not represent the view of a majority of the members of this panel. As to this issue, the majority view is stated in Judge Wieand's separate opinion, appended below.

The issue of counsel fees, properly raised by Mrs. Mantell in her answer to, and counterclaim in, the Pennsylvania action and properly within Pennsylvania's jurisdiction was, at the request of both parties, removed from the master and addressed by the court at the August 1987 hearing. At the master's hearing some two years earlier, Mrs. Mantell's Pennsylvania counsel testified that he had, on Mrs. Mantell's behalf, retained a Texas attorney "for the limited purpose of challenging the jurisdiction of the court in Texas because of the pending Pennsylvania divorce," that the Texas attorney had, to that time, "done a limited amount of work there," and that he had had a discussion with the Texas attorney two months prior to the master's hearing and had "asked him at that time how much he estimated was owed, and he told me that he felt that he was owed $500.00." The master, in his report, found these fees to be reasonable and advised the court that "maintaining the Texas action, after Mr. Mantell had sued as Plaintiff here in Pennsylvania, was improper," that "all Mrs. Mantell's legal expenses associated with the Texas action should be paid by Mr. Mantell" and, because the Texas action was not yet resolved, that "the Court should retain jurisdiction of the matter of future attorney's fees and costs arising from the action in Texas." The trial court cited *Young v. Young,* 274 Pa.Super. 298, 418 A.2d 415 (1980), for the factors to be considered in awarding attorney's fees: the spouses' ability to pay, the recipient's need, and the reasonableness of the

action. The authority of Pennsylvania courts to grant such relief is an open question in light of this court's divided decision in *Williams v. Williams,* 373 Pa.Super. 143, 540 A.2d 563 (1988). However, Mr. Mantell has not challenged, either in the trial court or on appeal, the trial court's authority to order payment of the out-of-state fees, focusing instead on the reasonableness of the fees assessed against him. Accordingly, I would leave for another day the resolution of the questions of statutory interpretation and application of principles of res judicata and collateral estoppel which are suggested by *Williams.*

fees as charged. It found that Mrs. Mantell clearly did not have the ability to pay her fees, that she needed assistance in paying them, and that Mr. Mantell was in a position to help with these costs. Additionally, it stated, "[w]e, however, cannot conclude that the fees owed to [counsel] in Texas are reasonable. A bill totaling $7,762.50 has been submitted for his services. [Mr. Mantell] will be held responsible for 50 per cent of this bill or $3,881.25."

Mr. Mantell objects to this award as unreasonable, arguing that it was contrary to and unsupported by the evidence. He points to the disparity between that figure and the $500.00 fee presented at the July 1985 hearing. He argues that the record does not support either the total billed or the amount Mr. Mantell was ordered to pay. Mrs. Mantell underscores the policy behind awarding attorney's fees and argues that this is a case where such an award is eminently justified. She also argues that the July 1985 figure was a mere estimate on the part of her Pennsylvania attorney, that the litigation handled in Texas ultimately spanned more than three years, and that the trial court was well within its province to weigh the conflicting evidence and conclude that Mr. Mantell should pay some portion of the expense incurred.

Our scope of review of an award of counsel fees in a divorce action is limited to a determination of whether the trial court committed an abuse of discretion. *Campbell v. Campbell*, 357 Pa.Super. 483, 516 A.2d 363 (1986). In a situation such as this where the fees requested fall outside the usual process of divorce litigation, the discretion of the trial court is especially taxed. As this court noted in *Williams, supra:*

> Although Section 401(b) of the Divorce Code allows a court to make an award of counsel fees, it does not provide any guidance as to how a court shall determine where such an award would be appropriate. This guidance is found in our case law, which has developed in two directions. Although many cases require the petitioning spouse to demonstrate that he/she is in actual need of the

award of fees in order to achieve "par" in protecting his/her rights in the divorce action, other cases indicate that the trial court may be guided by a somewhat broader spectrum of considerations in deciding to award counsel fees. *Johnson v. Johnson*, 365 Pa.Super. 409, 529 A.2d 1123 (1987) (Beck, J., concurring), and cases cited therein. The latter cases indicate that the trial court should consider all relevant factors, including equitable considerations. *Id.*

*Id.*, 373 Pa.Superior Ct. at 155–56, 540 A.2d at 569. There is sufficient evidence of record to substantiate Mrs. Mantell's need of assistance with the expenses connected with the Texas litigation and Mr. Mantell's ability to pay the award. Indeed, Mr. Mantell has not challenged her entitlement to an award of reasonable counsel fees. The trial court concluded, however, that the charges made by Texas counsel were unreasonable, even given the duration of the Texas action. Although it properly reduced the amount of the award in light of this finding, I must agree with Mr. Mantell that the trial court failed to state a rationale adequate to support the amount actually entered. While the evidence submitted by Mrs. Mantell might, upon further examination by the factfinder, be sufficient to establish an amount that would constitute a reasonable fee for the time expended and the services rendered, I must conclude that in the absence of a specific finding to that effect the trial court's award of $3,881.25 toward fees charged by Texas counsel was an abuse of discretion. Accordingly, I would vacate the award of counsel fees and remand for further proceedings to determine reasonable counsel fees.

WIEAND, J., joins, except on the issue of counsel fees as stated in his separate Opinion.

DEL SOLE, J., files a concurring and dissenting opinion.

### JUDGMENT

ON CONSIDERATION WHEREOF, it is hereby ordered and adjudged by this Court that the Decree of divorce,

equitable distribution order and order awarding alimony are affirmed; order awarding counsel fees is reversed.

DEL SOLE, Judge, concurring and dissenting:

Although I agree with President Judge Cirillo's disposition of the issues raised by Appellant pertaining to alimony and equitable distribution of certain real property, I find it necessary to join Judge Wieand with regard to the Texas counsel fee award. Further, I dissent from that portion of President Judge Cirillo's Opinion which addresses the pension award.

The trial court held that, because of particular uncertainties, it would not distribute the pension at the time of its ruling, but instead would elect to provide for a deferred distribution settlement. The courts and authors in this area have recognized deferred distribution as an alternative method to immediate offset as a means for effectuating benefit settlements. *Flynn v. Flynn*, 341 Pa.Super. 76, 491 A.2d 156 (1985); Troyan, *Pension Evaluation and Equitable Distribution*, 10 Fam.L.R. 3001 (1983). While deferred distribution is a recognized option, the court in this case set forth an incorrect formula for determining the ultimate award.

The trial court stated that it was applying the formula detailed by this court in *King v. King*, 332 Pa.Super. 526, 481 A.2d 913 (1984). In *King* it was held that a "coverture" fraction was to be applied to the benefit when it entered pay status. "The numerator of the fraction is the total period of time the employee spouse was participant in the plan from date of marriage until date of separation, and the denominator is the total period of participation in the pension plan." *Id.*, 332 Pa.Superior Ct. at 533, 481 A.2d at 916. When the pension enters pay status, the coverture fraction is to be multiplied by the benefit. The result will yield the portion of pension benefits entitlement which is marital property. It is for the court to determine how the sum available for equitable distribution is to be apportioned between the spouses. *See*: Troyan, *Pension Evaluation and Equitable Distribution, supra*, at 3007.

In the instant case, the trial court correctly created the "coverture fraction". The numerator was found to be 5.917, the number of years that Appellee participated in the plan from the date of marriage until the date of separation. The denominator was yet to be determined by the court since it represented Appellant's total number of years as a participant in the plan. However, the court erred when it stated that this fraction equaled "Defendant's % share of pension." The coverture fraction does not determine one spouse's share of that pension. The coverture fraction is to be multiplied by the actual benefits. The resulting figure will equal, not Mrs. Mantell's share but, the portion of the pension which is marital property.

The task of equitable dividing the actual portion of the pension which is marital property is a separate matter for the court to determine. In some cases this task too is done at a latter date, when the plan enters pay status. However, I believe it would be a better practice for the court, at the time of equitable distribution to assign the nonemployee-spouse a percentage to be received from whatever amount is latter determined to represent the marital property portion of the pension. By predetermining the nonemployee-spouse's percentage share, the trial court will be one step further in ending the parties legal entanglements. At the time of retirement all that will remain for the court is an exercise in simple mathematics. The potential for lengthening the hostilities between the parties will be minimized. I hasten to point out that the use of the "deffered distribution" method in pension matters should be a last resort tactic. Trial court's should seek immediate offset of pensions and utilize actuarial values whenever possible. These methods would have the salutary benefit of ending the parties' litigation and of providing certainty for the nonemployee-spouse. *See: Flynn v. Flynn, supra* (Concurring and Dissenting Opinion by Beck, J. 491 A.2d at, 164).

The master in this case recommended such a percentage. He suggested that wife be entitled to receive one-half of the monthly retirement pay which is determined to be marital property. Under the circumstances of this case, I believe

that such an award would be fair and equitable. Accordingly, I believe the court should set forth a percentage, such a the 50% recommended by the master. This figure can later be applied to the coverture fraction multiplied by Mr. Mantell's monthly retirement benefits to calculate the amount Mrs. Mantell shall receive each month.

In conclusion, I believe the case should be remanded to the trial court to correct the pension award which will ultimately be received by Mrs. Mantell. It is also my position that the trial court should, at the time when it sets forth the known figures for the pension calculation, determine what percentage Mrs. Mantell is equitably entitled to enjoy for that portion of the pension which is eventually determined to be marital property.

WIEAND, Judge:

I agree with President Judge Cirillo that, except for the trial court's award of counsel fees in the Texas action, the decree of divorce and order of distribution must be affirmed. The award of counsel fees in the Texas action, however, was improper and must be vacated.

In 1982, Francis P. Mantell, husband, filed a divorce action against his wife, Eiko Mantell, in Cumberland County, Pennsylvania. While that action was pending, the husband moved to Texas and there commenced a second divorce action. Wife challenged the jurisdiction of the Texas court, and that court eventually dismissed the divorce action there filed on grounds that it lacked subject matter jurisdiction. When a divorce decree was subsequently entered in Pennsylvania, the Cumberland County court made an award to wife for counsel fees which she had incurred in defending the action in Texas. This was unwarranted and improper.

The general rule is that the parties to litigation are responsible for their own counsel fees and costs unless otherwise provided by statutory authority, agreement of the parties, or some other recognized exception. *Chatham Communications, Inc. v. General Press Corp.*, 463 Pa. 292, 300–301, 344 A.2d 837, 842 (1975); *Shapiro v. Magaziner*, 418 Pa. 278, 280, 210 A.2d 890, 892 (1965). Section

401(b) of the Divorce Code[1] in Pennsylvania authorizes a court to award reasonable counsel fees in a divorce action. However, such fees must arise as a direct result of the divorce action under consideration by the court. See generally: *McNulty v. McNulty,* 347 Pa.Super. 363, 374, 500 A.2d 876, 882 (1985). See also: *Padezanin v. Padezanin,* 341 Pa.Super. 26, 491 A.2d 130 (1985) (counsel fees attributable to *present* divorce action may be recovered, but fees arising from prior support action and prior divorce action are not recoverable). Section 401(b) does not authorize an award for counsel fees incurred in a separate action.

Whether counsel fees were recoverable in the Texas action was determinable according to Texas law. If they were recoverable, they could be allowed only as an incident of the action in Texas. They could not be awarded by the courts of another state in a separate action. See: *Williams v. Williams,* 373 Pa.Super. 143, 540 A.2d 563 (1988) (Concurring and Dissenting Opinion by Wieand, J.).

It is elementary that the judgment of every court on matters within its jurisdiction is conclusive on every other court. See: 20 P.L.E. Judgments § 251. "The doctrine of res judicata precludes the parties from relitigating controversies which have been settled by a valid final judgment of a court of competent jurisdiction...." *Id.* The final judgment of a court having competent jurisdiction is final not only as to matters which were actually raised therein but also as to matters which might have been raised. The right to recover counsel fees, where recoverable, is a part of the principal action and must be asserted therein. A separate action to recover counsel fees is not permitted; it constitutes an impermissible splitting of a single cause of action. *Goldberg v. Goldberg,* 306 Pa.Super. 504, 506, 452 A.2d 838, 839 (1982); *Leomporra v. American Baking Co.,* 198 Pa.Super. 545, 549–550, 178 A.2d 806, 807 (1962). "A single claim or demand cannot be divided and made the subject of several actions, and if actions are brought for different parts of a single demand a judgment on the merits in one is available as a bar to the

1. Act of April 2, 1980, P.L. 63, No. 26, § 101, 23 P.S. § 101 et seq.

others." 20 P.L.E. Judgments § 258. See: *Spinelli v. Maxwell*, 430 Pa. 478, 243 A.2d 425 (1968). So it is with a claim for counsel fees. It is a part of the claim which inures to a party, where permitted, as a part of the principal action. It cannot be split from the principal action. If counsel fees are not claimed in the principal action, the judgment entered therein is a bar to a subsequent action for such counsel fees.

■ This is particularly so where a second action for counsel fees is brought in a state different from that in which the principal action was litigated. The allowance of counsel fees in the principal action must be determined by the law of the state in which that action was brought, and when that issue has been determined, whether in contested proceedings or because a claim therefor was not made, the determination is final. It cannot be relitigated in collateral proceedings brought in another state.

■ There is neither statutory authorization nor principle of common law which permits a Pennsylvania divorce court to award counsel fees incurred by a party in prosecuting or defending a separate action in another jurisdiction. For this Court to adopt a rule permitting "Pennsylvania courts to second guess the courts of another jurisdiction with respect to counsel fees incurred in litigation pursued in the courts of such other jurisdiction would be improvident, unwieldy, and unwise and would violate principles of res judicata." *Williams v. Williams, supra*, 373 Pa.Superior Ct. at 163, 540 A.2d at 573 (Concurring and Dissenting Opinion by Wieand, J.). There is no good reason for allowing a cause of action to be split and a separate action maintained for counsel fees. Counsel fees must be recovered, if at all, in the action in which such fees were incurred by a party.

■ Even if counsel fees incurred in Texas could be recovered in this action, the wife-appellee failed to introduce evidence sufficient to sustain the court's award. The only evidence offered in support of the wife-appellee's claim was a copy of a bill prepared by Texas counsel in the amount of $7,762.50. There was no testimony regarding the nature of

the services rendered, the time spent, or the reasonableness of the charges. The trial court deemed the charges excessive and reduced the amount by one-half. The allowance of this amount, however, was arbitrary and wholly unsupported by evidence.

For these reasons, the part of the trial court's order which made an award to the wife-appellee for counsel fees incurred in the separate action in Texas must be and is reversed. The case will not be remanded for another hearing to permit the wife-appellee a second opportunity to prove the reasonable amount of counsel fees incurred in such action.

CIRILLO, President Judge, files a dissenting opinion.

CIRILLO, President Judge, dissenting:

I respectfully dissent to Judge Wieand's opinion with respect to the issue of counsel fees as stated in my separate opinion.