## Moyer v. Moyer

*Colleen Malloy,* for plaintiff.
*Charles Cusick,* for defendant.

McCRACKEN, *P.J.,* November 28, 1990—The issue is the correct interpretation of a provision in a marital dissolution agreement giving the wife 25-percent interest in the husband's pension. Was it the parties' intent that she receive 25 percent of that portion of the pension which the husband had earned during the lifetime of the marriage, or was it their intent that she have 25 percent of the entire amount of the pension at the time it is paid out?

The marital dissolution agreement was entered into on December 10, 1981 as an elaboration of a

stipulation entered into by the parties, through their counsel, at a master's hearing on September 14, 1981. The agreement was incorporated into the master's recommendations and it was approved by an order of court in conjunction with the divorce decree rendered on January 5, 1982. On July 3, 1990, the wife filed a motion for the enforcement of the agreement alleging that she is receiving only 25 percent of the 1981 value of the pension rather than 25 percent of its value in 1989 when the husband began to collect it and that the latter was the intent of the parties under the 1981 agreement. The husband, by contrast, contends that the parties intended that the 1981 value of the pension be used in calculating the amount to which the wife is entitled.

The parties agree that the controlling issue is the interpretation of paragraph 19 of the agreement entitled "Husband's Obligations." It reads as follows:

"Husband will soon have a right in a pension through the membership in the pipe fitters union. When the Husband retires, or in the event that he predeceases the Wife, then the Wife, without regard to her marital status, if still alive, will have a 25-percent interest in this union pension of the Husband. Wife shall receive 25 percent of whatever settlement option the Husband or his primary beneficiary elects to receive this pension in. If the Wife receives $25,000 or more as her share in the settlement of her lawsuit against A&P (exclusive of interest, costs and attorney fees), then she will waive all her rights to the Husband's pipe fitters union pension."[1]

---

1. The final sentence of this paragraph no longer has any force, inasmuch as the record indicates that the wife obtained no recovery from the lawsuit mentioned.

We should observe at the outset that both parties, in their briefs on this motion, have sought to introduce issues that are not properly relevant to the narrow question before us. Plaintiff-husband, for example, claims that this matter is controlled by *King v. King,* 332 Pa. Super. 526, 481 A.2d 913 (1984), which held that only that portion of a pension that was earned during the lifetime of the marriage (before the final separation) is subject to equitable distribution as marital property. He argues that awarding the defendant-wife 25 percent of the 1989 value of the pension would violate this precedent because it would cause the court to distribute what has been held to be non-marital assets. The point he misses, however, is that the court is not being asked to decide what is or is not marital property under the law, but rather to interpret a provision in an agreement that was drawn up prior to the *King* decision. To assume without evidence that the parties intended to make a distinction between benefits that were earned during the marriage and those that were earned afterwards is to assume that they foresaw *King.* Moreover, since our task is to interpret and enforce the parties' agreement, it would not matter if the parties had agreed to the distribution of an asset that later case law would hold to be non-marital. If they intended to distribute the pension at its 1989 value, then that intent should be given effect. We therefore conclude that *King* is not controlling on this point.

Nor is there any relevance in the fact that the administrators of the pension plan have decided that the agreement calls for the distribution of the pension at its 1981 value. The agreement has been incorporated into an order of court and it is the court's responsibility to interpret and enforce its own orders. The action of the administrators does

not, as the husband claims, shift to the wife the burden of producing evidence to disrupt the status quo. Should this court determine that the interpretation which the administrators have given to the agreement is erroneous, this error will afford no basis for continuing an arrangement that is contrary to what the parties intended.

In the same way, there is no question of invading the marital assets of the plaintiff-husband's second marriage. If it was his intent to give his first wife 25 percent of the 1989 value of his pension, and if he bound himself by contract in 1981 to do this, then the amount of the pension due the first wife is not an asset of the second marriage because he never brought it into his second marriage. Therefore, if we determine that, prior to entering into his current marriage, he had already contracted to give this money to his first wife as part of a settlement of the economic claims of his first marriage, then his second wife never had any claim to it.

We also reject defendant-wife's claim that the addendum to the agreement on February 20, 1987 sheds any light on the intent behind the original agreement. It merely states that, "Edward H. Moyer's obligation under paragraph 19 of the December 10, 1981 agreement remains in full force and effect." But it says nothing regarding the actual meaning of that paragraph.

Having thus determined which issues are not relevant to our inquiry, we come to the one issue directly before us: that of determining the intent of the parties from the language of their agreement. It is axiomatic that our starting point must be the plain language of the agreement which may not be disregarded when it is clear and unambiguous. *Port Authority v. Rugare,* 29 Pa. Commw. 83, 370 A.2d 768 (1977). The language of paragraph 19 states that

"When the Husband retires, . . . then the Wife . . . will have a 25-percent interest in this union pension of the Husband," and that "Wife shall receive 25 percent of whatever settlement option the husband . . . elects to receive this pension in." It is obvious that the parties intended to defer distribution of the pension until it became payable. But it is less obvious whether "a 25-percent interest in this union pension" refers to the pension as it existed at the time of the agreement or as it would exist at the time of the husband's retirement. Bearing in mind, however, that it is proper to consider the entire agreement so as to give effect, if possible, to the whole instrument, we believe that it is proper to consider paragraph 11 as shedding light on the proper meaning of paragraph 19. Paragraph 11 is entitled "After-Acquired Personal Property" and reads:

"Each of the parties shall hereafter own and enjoy, independently of any claim or right of the other, all items of personal property, tangible or intangible, hereafter acquired by him or her, with full power in him or her to dispose of the same as fully and effectively, in all respects and for all purposes, as though he or she were unmarried."

This paragraph states in clear and unambiguous terms that neither party is to acquire any interest in personal property acquired by the other after the date of the instrument (December 10, 1981). Personal property includes money owed to an individual. Blacks' Law Dictionary, 5th ed. at 1096. Since the increase in value of the pension fund between 1981 and 1989 represents money which the husband earned after 1981, it constitutes after-acquired personal property. Accordingly, it is not to be distributed under the agreement, but is the sole property of the spouse who has earned it. (The wife attempts to avoid this conclusion by arguing that under 1

Pa.C.S. §1933, the particular controls the general in two provisions enacted together. But that is true only when there is an irreconcilable conflict between the two provisions. Here there is no such conflict if paragraph 19 is understood as referring to the 1981 value of the pension.)

We therefore conclude that the method of distribution currently in force, whereby the wife receives 25 percent of the 1981 value of the husband's pension, is in accord with the intent of the parties at the time of the equitable distribution.[2] We will therefore dismiss the wife's motion.

### ORDER OF COURT

Now, November 28, 1990, the court holding that defendant, Donna Lou Moyer, is entitled under the marital dissolution agreement to 25 percent of the pension of plaintiff, Edward Henry Moyer, as valued on December 10, 1981, therefore, defendant's motion for enforcement of said agreement filed on July 3, 1990, is hereby dismissed.

---

2. Although, as we have said earlier, *King v. King, supra,* does not apply to the interpretation of this agreement, it is still noteworthy that the agreement, as we have construed it, is in accord with the result in *King* regarding the portion of the pension that is subject to equitable distribution.