585 A.2d 42

**Luana B. LYONS, Appellant,**

v.

**Thomas P. LYONS.**

Superior Court of Pennsylvania.

Argued Sept. 17, 1990.

Filed Jan. 17, 1991.

272

■■■■■■■■■■■■■■■■

Elizabeth L. Bellissimo, Pittsburgh, for appellant.

Richard J. Catalano, Pittsburgh, for appellant.

Before TAMILIA, MONTGOMERY and HOFFMAN, JJ.

HOFFMAN, Judge:

■■ Appellant-wife (hereinafter "Wife") appeals from a December 15, 1989 equitable distribution and child support order. The order in question denied Wife's motion for post-trial relief and modified a September 15, 1989 order to require appellee-husband (hereinafter "Husband") to provide medical insurance coverage for two of the parties' minor children and to pay for half of their unreimbursed medical expenses.[1] Wife contends that the trial court erred in: (1) failing to distribute Husband's pension on a 50/50 basis; (2) underestimating the present value of the marital portion of Husband's pension; and (3) failing to order Husband to pay all of the children's medical and dental expenses that are not covered or reimbursed by insurance.[2]

1. The September 15, 1989 order had (1) reduced the amount of child support which Husband was to pay wife from $595.00 per month to $225.00 per month, (2) awarded Husband his entire pension, and (3) dismissed all other claims of both parties for equitable distribution, alimony and counsel fees.

2. Wife also makes two claims regarding the amount of child support awarded in the September 15th order. Specifically, Wife contends that the trial court erred in (1) awarding an insufficient amount of child support; and (2) failing to adjust the child support award to provide for Husband's payment of the children's private school tuition. The order of September 15 decreased the child support order from $595.00 per month to $225.00 per month, but failed to address the issue of private school tuition. In accordance with Pa.R.C.P. 1920.52(b), claims involving child support are specifically excluded from those matters in which post-trial motions are required. Therefore, Wife should have taken a direct appeal from the September 15th order within 30 days. As Wife failed to take a direct appeal from the September 15th order, her two support claims are waived. *See, e.g., Baraff v. Baraff,* 338 Pa.Super. 203, 487 A.2d 925 (1985).

For the reasons that follow, we affirm the trial court's order regarding Husband's payment of uncovered or unreimbursed medical expenses, and we vacate the portion of the court's order disposing of Husband's pension and remand for proceedings consistent with this Opinion.

The parties herein married on April 18, 1962, and separated in March of 1987. After their separation, Wife resided at the marital residence with four of the parties' six children. Subsequently, two of the four children took up residence with Husband, and Wife remarried. On April 27, 1987, during the pendency of the divorce action, the court ordered Husband to pay Wife $595.00 per month in alimony *pendente lite* and child support for four of the parties' six children. The parties were divorced by decree entered September 10, 1987. At the time of the divorce decree, economic issues remained concerning alimony, distribution of Husband's pension, counsel fees, and other expenses relating to child support. The two main economic assets were the marital residence and Husband's pension. The parties executed a handwritten document (the "Agreement") which provided that they would divide these assets 50/50, once the marital residence was sold.[3] Thereafter, however, Wife would not consent to the sale of the marital home unless she was guaranteed $55,000.00 from the net proceeds. Consequently, when the house was later sold for $110,750.00, Wife received $55,000.00 and Husband $42,-000.00 of the proceeds.

Subsequently, the parties were unable to agree on a value for Husband's pension, and Wife praeciped for an equitable

**3.** The Agreement provided, in relevant part, that:

I Thomas P. Lyons do agree to sign the divorce papers this week to set Luana Lyons free providing she agrees to dividing the sale of the marital home equally 50/50 just as soon as the real estate finds a buyer. I will also give her 50% of my retirement fund just as the law says she is entitled to.

I Luana Lyons do agree to give Thomas Lyons 50% of the marital home just as soon as the real estate finds a buyer and I will also receive a 50/50 split of his retirement fund up to the date the law says I am entitled to providing Thomas Lyons signs the divorce papers this week.

distribution conciliation. On January 10, 1989, the court below held a hearing on support, equitable distribution and related issues. On September 15, 1989, the court entered an order modifying the April 27, 1987 order to $225.00 per month for child support for the two minor children who were residing with Wife, awarding Husband his entire pension, and dismissing all other claims of both parties for equitable distribution, alimony and counsel fees. No appeal was taken from this order.

On September 21, 1989, Wife filed a motion for post-trial relief. On December 15, 1989, the Court denied the motion, but modified the September 15th order by requiring Husband to provide medical insurance for two of the children, and ordering him to pay one-half of their unreimbursed medical expenses. Wife then filed this timely appeal from the December 15th order.

## I. THE PENSION

Wife's first two claims concern Husband's pension and are interrelated. Wife first asserts that the trial court erred in failing to distribute Husband's pension on a 50/50 basis. Wife claims that this determination was contrary to the parties' agreement, and thus she is entitled to half of Husband's pension in accordance with that agreement.

We note at the outset that our scope of review in equitable distribution matters is limited. *See Lowry v. Lowry*, 375 Pa.Super. 382, 544 A.2d 972 (1988). Trial courts have broad equitable powers to effectuate justice in these matters, *see* 23 Pa.S.A. § 401(c); *see also Teribery v. Teribery*, 357 Pa.Super. 384, 516 A.2d 33 (1986), and a trial court's award of equitable distribution will not be reversed absent an abuse of discretion. *See Wayda v. Wayda*, 395 Pa.Super. 94, 576 A.2d 1060 (1990). We will find an abuse of discretion only if the trial court misapplied the law or failed to follow proper legal procedures. *Id.*

The central question presented for our review concerns the effect of the parties' agreement on the equitable distri-

bution issues. We have noted that "a property settlement agreement between husband and wife will be enforced by the courts in accordance with the same rules of law applying to determining the validity of contracts generally." *See VanKirk v. VanKirk,* 336 Pa.Super. 502, 505, 485 A.2d 1194, 1196 (1984) (quoting *Kleintop v. Kleintop,* 291 Pa.Super. 491, 495–96, 436 A.2d 223, 225 (1981)); *Litwack v. Litwack,* 289 Pa.Super. 405, 433 A.2d 514 (1981); *see generally Sonder v. Sonder,* 378 Pa.Super. 474, 549 A.2d 155 (1988) (en banc) (comparing and contrasting enforcement of property settlement agreements under contract law and Divorce Code). It is well-established that the paramount goal of contract interpretation is to ascertain and give effect to the parties' intent. *See Greene v. Oliver Realty, Inc.,* 363 Pa.Super. 534, 539, 526 A.2d 1192, 1194 (1987) (citing *Burns Mfg. Co. v. Boehm,* 467 Pa. 307, 356 A.2d 763 (1976)); *see also Litwack v. Litwack, supra* 289 Pa.Super. at 407, 433 A.2d at 515 (in construing separation agreement court must adopt construction that gives effect to parties' intent in view of surrounding circumstances and purpose of contract). When the trier of fact has determined the intent of the parties to a contract, an appellate court will defer to that determination if it is supported by the evidence. *See Yellow Run Coal v. Alma–Elly–Yv Mines,* 285 Pa.Super. 84, 90, 426 A.2d 1152, 1155 (1981) (citing *Hatalowich v. Redevelopment Auth. of Monesum,* 454 Pa. 481, 312 A.2d 22 (1974)).

In reviewing the propriety of the determination below, it is essential to keep in mind the manner in which this case was presented to the trial court. The parties' August 31, 1987 agreement reveals a clear intention that the principal marital assets (the house and the pension) would be split on a 50/50 basis. When the parties appeared before the trial court, however, one of the two assets already had been sold, and the proceeds had been distributed, at Wife's insistence, on an unequal basis, with Wife receiving the lion's share. This distribution was in direct contravention of the parties' intent as expressed in their agreement.

On these facts, the court below apparently determined that a 50/50 split of Husband's pension would not effectuate an equal division of the two major marital assets, and thus would contravene the parties' contractual intent. *See* Trial Court Opinion, September 18, 1989, at 7 ("... it would appear that the equal division originally envisioned by the parties is not applicable to the instant case but rather the division should be weighted in favor of the Husband"). The court therefore attempted to account for the $6500.00 [4] windfall Wife had received from the sale of the home.

Despite the fact that the court below attempted to insure a 50/50 division of the two assets consistent with the parties' intent, Wife argues that the trial court should have distributed the *pension* 50/50 as per the letter of the pension provision in the agreement. Wife thereby suggests that the court was obliged to view the pension distribution provision with blinders, focusing not on the entire agreement, but on the pension provision alone. We cannot agree. As we have already noted, the paramount goal of contract interpretation is to give effect to the intent of the parties. *See Greene v. Oliver Realty, Inc., supra* at 539, 526 A.2d at 1194 (citing *Burns Mfg. Co. v. Boehm, supra*); *Litwack v. Litwack, supra* 289 Pa.Super. at 407, 433 A.2d at 515. Here, the court's apparent finding that the parties intended to distribute *both major marital assets* equally, rather than to distribute *each item* on a 50/50 basis, was supported by the evidence. Accordingly, the court did not err in refusing to divide the marital portion of husband's pension 50/50.

■ Although we have concluded that the trial court did not err in refusing to distribute the pension on a 50/50 basis, we note that there is an apparent inconsistency in the

4. The marital residence was sold for a profit of $97,000.00. Out of this amount, Wife received $55,000.00, and Husband received $42,-000.00. Had the proceeds from the sale of the home been distributed equally between Husband and Wife as contemplated by their agreement, however, each would have been entitled to $48,500.00. Thus, Wife received $6,500.00 more than she was entitled to out of the net proceeds from the sale of the parties' home.

court's application of this conclusion. The court stated that it would divide the marital portion of Husband's pension on a 65/35 basis, in favor of Husband. *See* Trial Court Opinion, September 18, 1989, at 7. The purpose of the downward adjustment of Wife's share apparently was to compensate for the extra $6500.00 Wife received from the sale of the house. After making this calculation, however, the court went on to hold that since Wife had already received the extra $6500.00, that advance must be credited against any distribution of Husband's pension. Accordingly, the court awarded Husband his *entire* pension. *Id.* By *both* adjusting the distribution ratio *and* crediting the advance that Wife received against her share of the pension, the trial court *twice* penalized Wife for the extra money that she received from the sale of the residence. Although we might, under certain circumstances, attempt to correct this error ourselves, we think the better course is to remand for the trial court to redetermine Wife's proper share of the pension.[5]

Wife's second pension claim challenges the method of valuation of Husband's pension adopted by the trial court. Specifically, Wife claims that the trial court's determination of the present value of the marital portion of Husband's pension was erroneous because it applied an improper coverture fraction. As a result, she argues, the court undervalued her proper share of the pension.

■ There are two approaches to distributing a pension: the immediate offset method and the deferred distribution

---

**5.** Wife also suggests that the court did not have the authority to look to the overall intent of the parties because the single question before it was the *value* of Husband's pension and not its distribution. This argument is disingenuous. It was Wife who praeciped for an equitable distribution conciliation when she and Husband were unable to agree on a value for the pension. *See* Praecipe For Conciliation. Wife cannot, on the one hand, come into court asking for an "equitable" distribution, and then, on the other hand, attempt to limit the court's powers in effectuating that distribution. *See Teribery v. Teribery, supra* (courts have broad equitable powers to effectuate justice in equitable distribution matters). When Wife sought relief under this agreement, she ran the risk that the court's interpretation of it would not be to her liking.

method. *See Lowry v. Lowry, supra; Braderman v. Braderman*, 339 Pa.Super. 185, 488 A.2d 613 (1985). The immediate offset method distributes the pension benefits, even if they are to be received in the future, at the time of the equitable distribution hearing. *See Lowry v. Lowry, supra.* This method of distribution is advantageous in that it avoids further entanglement between the parties. *See Braderman v. Braderman, supra.* The immediate offset method requires a calculation of the present value of the pension benefits because the non-employee spouse will receive an actual present distribution of his or her share of the pension despite the fact that the pension itself will not actually be received, if at all, until some time later. *Id.* The present value reflects the present worth to the employee-spouse of these future benefits. *Id.* The court then must calculate the marital portion of the present value of the benefit. This value may be determined through use of a "coverture" fraction. *See Lowry v. Lowry, supra* 375 Pa.Super. at 404, 544 A.2d at 983. The numerator of the coverture fraction represents the total period of time in which the employee-spouse participated in the pension plan during marriage, and the denominator, the total period of time that the employee-spouse participated in the benefits program. *See Braderman v. Braderman*, 339 Pa.Super. at 198, 488 A.2d at 619; *King v. King*, 332 Pa.Super. 526, 533, 481 A.2d 913, 916 (1984). *See generally* Troyan, *Pension Evaluation and Equitable Distribution*, 10 Fam.L.Rep. 3001 (1983).

Deferred distribution, on the other hand, causes the trial court to retain jurisdiction and distribute the pension benefits when they enter pay status. *See Lowry v. Lowry, supra.* This method of distribution is the preferred means of dividing unvested pension benefits which may never actually be received by the employee-spouse due to contingencies such as early termination or death. *Id.* It is also preferred when the parties' other assets are insufficient to offset a present award of the pension to the nonemployee-spouse. *See id.* (citing *DeMasi v. DeMasi*, 366 Pa.Super. 19,

50, 530 A.2d 871, 886 (1987)). Deferred distribution has been criticized for prolonging hostility between the parties.

■ We have recognized that neither distribution scheme will be appropriate to all cases. Rather, the trial court must balance the advantages and disadvantages of each method according to the facts of the case before it in order to determine which method would best effectuate economic justice between the parties. *See generally* N. Perlberger, *Pennsylvania Divorce Code* § 5.4, at 71 (Supp.1987). In the case before us, the parties do not dispute that the immediate offset method is the proper method of dividing the pension. The present value of the marital portion of Husband's pension can be ascertained, and Wife's share can be offset against the value of the other major marital asset, the house. The only issue is the court's computation of that present value.

■ At trial, Wife's expert testified that the present value of Husband's pension was $37,382.35.[6] Wife's expert further testified that the proper coverture fraction to be used to determine the present value of the marital portion of the pension should be .8834 (88.34%). This number was calculated by dividing 22.08 years, the length of time the parties were married while Husband's pension was in effect, by 25 years, the period of time it took for Husband's pension to fully accrue.[7] Wife's expert then multiplied the present value of Husband's pension, $37,382.35, by .8834, and determined the present value of the marital portion of the pension to be $33,023.57.

Husband contended, on the other hand, that the present value of his pension was only $17,886.00. This calculation was based on a projected pension benefit of $545.00 per month. In addition, Husband argued that the court should employ a coverture fraction of .5786 (57.86%). His cover-

6. This valuation was based on Husband's being entitled to pension benefits of $1200.00 per month when he reaches age 65.

7. Husband's pension fully accrued on February 1, 1990 after he had completed 25 years of service from the time his pension plan went into effect.

ture fraction was arrived at by dividing 22.08 years of marriage by *38.16* years of employment. Husband's denominator represented the amount of time Husband would have to work until he was age 65, the earliest time when he could retire from his present employment and actually begin to receive the pension benefits. Husband's suggested coverture fraction resulted in a present value of the marital portion of Husband's pension of $10,349.00.

The trial court did not accept either party's calculation of the marital portion of the pension. The court found that the present value of Husband's pension was $37,382.35, as determined by Wife's expert. However, the trial court then multiplied the present value of the pension by Husband's coverture fraction of .5786. The trial court therefore determined that the present value of the marital portion of the pension was $21,629.00.

Wife's specific claim is that the trial court erred in employing the coverture fraction suggested by Husband. We should note that the parties' disagreement in fixing the denominator may be a result of some imprecision in cases filed in this Commonwealth concerning use of the coverture fraction. This Court has variously referred to the denominator as representing "the total period the employee participated in the benefits program," *Braderman v. Braderman,* *supra* 339 Pa.Super. at 198, 488 A.2d at 619; *see also Mantell v. Mantell* 384 Pa.Super. 475, 482, 559 A.2d 535, 539 (1989) (impossible to discern coverture fraction at time of hearing because employee-spouse still active with no plans for retirement); *King v. King, supra* 332 Pa.Super. at 533, 481 A.2d at 916, and as representing "the total period of time the employee spouse was accruing benefits." *E.g., Lowry v. Lowry, supra* 375 Pa.Super. at 404, 544 A.2d at 983. In many instances, there will be no difference between these two figures, and hence no dispute. In this case, however, the different descriptions of the denominator do result in different computations. Wife argues that, because Husband's pension fully accrued after 25 years, the calculation of his years of participation in the pension plan must be fixed at that point, regardless of whether Husband

would have to wait another 13 years to receive the benefit. Husband, on the other hand, focuses on the number of years (38) that he, in fact, will participate in the plan. We should note that, although there is authority in favor of both arguments, the central focus in these cases remains an attempt to determine as practically and accurately as possible the marital portion of the pension. *See Lowry v. Lowry, supra* ("the point in valuing a pension for equitable distribution purposes is to estimate as accurately as possible the real present value of a future and somewhat contingent marital asset and to equitably distribute it in the present"). Here, the trial court reasoned that, because Husband intended to continue working until age 65 and *had* to wait until age 65 to receive the benefits of his pension, Husband's proposed coverture fraction more accurately reflected the marital portion of the pension. *See* Trial Court Opinion, September 18, 1989, at 5; *see also* N.T. January 10, 1989, at 152–53. The court's conclusion clearly was supported by the evidence concerning the plan and the parties' intentions. In light of the facts of this case, and the authorities cited above, *see Braderman v. Braderman, supra; see also* N. Perlberger, *Pennsylvania Divorce Code* § 5.4, at 70 (Supp.1987) (denominator of coverture fraction represents total period spouse participated in plan), we cannot hold that this determination was error. Accordingly, we conclude that the trial court did not err in applying a coverture fraction of .5786 to the present value of the pension in order to determine Wife's proper share, and in fixing the marital portion at $21,629.43.

## II. MEDICAL EXPENSES

 Wife's remaining claim focuses on that portion of the court's order concerning medical expenses. The facts relating to this claim are as follows. The September 15th order, which modified the prior alimony *pendente lite* and child support order, did not address the issues of which party would maintain medical insurance for the parties' children, Natalie and Allison, and which party would be responsible for the childrens' medical and dental expenses

that were not covered or reimbursed by insurance. After consideration of Wife's Motion for Post–Trial Relief, the trial court modified its September 15th order as follows:

> The Defendant shall provide medical insurance coverage for the parties' minor children and shall be responsible for one-half (½) of all medical expenses not reimbursed by said coverage.

Trial Court Order, December 15, 1989, at 1–2.

Wife argues that the court erred because its order accounted only for unreimbursed medical expenses and not for *uncovered* medical expenses or for *dental* expenses. We disagree. The phraseology of the December 15 order clearly is broad enough to encompass these expenses.

■ Wife also argues that the court erred because it should have required Husband to pay *all* of the children's uncovered and unreimbursed medical and dental expenses. At the outset we should note that a child support order will not be disturbed on appeal unless there is insufficient evidence to sustain it, or the court abused its discretion in fashioning the award. *Fee v. Fee*, 344 Pa.Super. 276, 279, 496 A.2d 793, 794 (1985). *See also Bedford v. Bedford*, 386 Pa.Super. 349, 353–54, 563 A.2d 102, 104 (1989); *DeWalt v. DeWalt*, 365 Pa.Super. 280, 529 A.2d 508 (1987). Chapter 43 of the Divorce Code contains general provisions governing support. *See* 23 Pa.C.S.A. § 4301 *et seq.* Section 4324 of this chapter provides that "the court may require that an obligor pay a designated percentage of a child's or spouse's reasonable and necessary health care expenses." *Id.* at § 4324.

Wife asserts that the trial court should have required Husband to pay *all* of the children's medical and dental expenses that are not covered or not reimbursed by insurance pursuant to this statute. *See* Appellant's Brief at 42–43. We disagree. Under § 4324, both the question *whether* to require the obligor spouse to pay these expenses, as well as the question of the *proper percentage* to assess, is within the discretion of the trial court. Here, the court had before it extensive testimony concerning the

parties' financial situation and earning capacity. On this record, we cannot conclude that there was an abuse of discretion in the trial court's order requiring Husband to pay one-half of the children's medical expenses that are not covered or reimbursed by insurance.

For the above-stated reasons, we conclude that: (a) the trial court did not err in refusing to distribute the marital portion of Husband's pension on a 50/50 basis; (b) the trial court nevertheless erred in twice penalizing Wife for the excess money she received from the sale of the marital home; and (c) the trial court did not err in refusing to require Husband to pay all of the children's medical and dental expenses that are not covered or reimbursed by insurance. Accordingly, we affirm the portion of the trial court's order directing Husband to pay half of the children's unreimbursed medical expenses, but we vacate that part of the order distributing Husband's pension, and we remand the case for further proceedings consistent with this Opinion.

Affirmed in part, distribution order vacated, case remanded. Jurisdiction is relinquished.