J-A19010-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| DEBORAH FORTE BARTKO, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| DANIEL THOMAS BARTKO, | |
| Appellant | No. 1804 WDA 2013 |

Appeal from the Order Entered October 4, 2013
In the Court of Common Pleas of Westmoreland County
Civil Division at No(s): 1761 OF 2010-D

| DEBORAH FORTE BARTKO, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| DANIEL THOMAS BARTKO, | |
| Appellee | No. 2026 WDA 2013 |

Appeal from the Order Entered October 4, 2013
In the Court of Common Pleas of Westmoreland County
Civil Division at No(s): 1761 OF 2010-D

BEFORE:  BENDER, P.J.E., OLSON, J., and FITZGERALD, J.[*]

MEMORANDUM BY BENDER, P.J.E.:            **FILED SEPTEMBER 02, 2014**

Deborah Forte Bartko (Wife) and Daniel Thomas Bartko (Husband)
filed cross-appeals from the order entered on October 4, 2013, that

_____

[*] Former Justice specially assigned to the Superior Court.

essentially duplicated the court's July 26, 2013 order providing for the equitable distribution of the parties marital property, and directing Husband to pay Wife: (1) a portion of her attorney's fees, (2) alimony for a four-year period, and (3) $1,000 for unreimbursed medical expenses. Both parties raise issues concerning these items. After review, we affirm.

The parties were married on July 24, 1987, and separated on July 7, 2010.[1] Wife filed a complaint in divorce on September 2, 2010. A hearing before a Master was held on February 6, 2013, which resolved issues concerning the equitable distribution of the parties' assets, including Husband's Pennsylvania State Employees' Retirement System (PSERS) pension, valued at $333,706.00, Husband's deferred compensation account, valued at $15,536.00, the parties' vehicles, and a bank account. The Master explained his recommendation for the division of the bank account, stating:

> First Commonwealth Checking and Savings Account. At the time of separation, the above account contained $70,835.99. The Wife removed $65,000.00 shortly after separation and returned $60,000.00 to her attorney, Mark Sorice, which he is holding in his trust account. Mr. Sorice is now holding $57,835.99 in his trustee account after the payment of $3,000.00 towards Master's fees and Court Reporter's costs. Additional Master's fees in the amount of $782.00 will be paid from the account by Mr. Sorice, thereby leaving a balance of $57,053.00. From the net amount held by Mr. Sorice in his trustee account, the Husband shall receive $15,000.00 and the balance remaining in the account in the approximate amount of $42,053.99 to the Wife.

_____

[1] Since Wife's two children from a previous marriage are both adults, as is the parties' son, no issues arose relating to the children in the context of the divorce proceedings.

Master's Report, 12/6/13, at 9. With regard to the marital residence, the Master noted that it was sold prior to the hearing with the proceeds divided between the parties. Therefore, the Master did not consider the amount derived from the sale as a marital asset available for distribution.

Additionally, we note that the Master analyzed the evidence presented by the parties as it related to the eleven factors set forth in 23 Pa.C.S. § 3502(a). Pertinent to the issues raised by the parties in this appeal, we set forth the Master's discussion relating to three of those specific factors as follows:

### 5. Earnings and Earning Capacity

The Wife is unemployed. The Wife had been previously employed as a bank teller, a cheerleading coach, and cared for children. All of those jobs were minimum wage. After the parties moved to Ligonier in about 1992, the Wife owned a florist shop but she stated her earnings were irregular and she ultimately closed the shop. The florist shop was sold and the parties received about $5,000.00 from its sale which was used for household expenses and medical bills. She has also worked as a cashier for Giant Eagle and worked two summers at Idewild in the gift shop cashier's office and in Storybook Forest. Those jobs were minimum wage jobs with no benefits. The Wife has no IRA or 401k. The Wife hasn't worked since 2010 when she stated she went into a coma and was hospitalized and received therapy for approximately one month.

Based on the Wife's age and health, it is doubtful she will be able to obtain employment for more than minimum wage unless she received additional training and her health improves. Upon cross-examination of the Wife, her Social Security Disability questionnaire was admitted as Exhibit B. The questionnaire indicated that she could follow directions and handle money, she could pay bills and use a checkbook, could lift up to ten pounds, can walk and stand for approximately six hours of an eight[-]hour day. The Wife stated that she doesn't

remember giving answers to the questionnaire, but believes she could not stand or walk for six hours a day at the present time. She indicated that if she were able, she would like to go back to work, but believes that her health prevents [her] from working.

The Husband is employed by PennDot as a Transportation Construction Supervisor. In his job he oversees the building of bridges and road repairs. He has been employed for twenty-four years by PennDot. The Husband testified that his base salary is between $52,000.00 and $54,000.00 per year. The Husband refused to produce his W-2 for the year 2012. The Husband pays Alimony Pendente Lite to the Wife in the amount of $448.77 every two weeks, or $975.00 per month. The Husband also has a pension plan and a deferred compensation plan and has medical coverage which covers both the Husband and the Wife.

. . .

## 13. **Insurance**

There was no testimony presented regarding life insurance. The Wife has medical insurance through her Husband's employer, PennDot. The cost of the Wife's medicines average $88.59 per month in unreimbursed medical expenses. Following the divorce, the Wife will lose her medical insurance through her Husband's employer. However, she may purchase medical insurance from PennDot under COBRA for $541.00 per month.

## 14. **Cost of Living**

The Wife testified extensively regarding her monthly cost of living which was as follows:

| | |
|---|---|
| Rent | $ 575.00 |
| Telephone | $ 30.00 |
| Cable | $ 19.00 |
| Water/Sewage | $ 40.00 |
| Garbage | $ 18.00 |
| Heat | $ 200.00 |
| Groceries | $ 200.00 |

Total Monthly Cost of Living   $1,082.00

The Master notes the Wife did not list the expenses of clothing, gasoline, recreation, medicine or doctor bills. The Wife testified that with her alimony, $948.77 per month, she is unable to meet her bills and must take money from her savings account to pay the bills. The savings account was acquired after the sale of the parties' house and the proceeds from the sale of the house were divided. The Husband presented no testimony regarding his cost of living.

The Wife presented a claim for actual and projected unreimbursed medical expenses from February 3, 2011 to date:

    (a)    Prescriptions – unreimbursed expense of $2,126.86 at $88.59 per month.
    (b)    Unreimbursed eye care in 2011 and 2013 of $600.00.
    (c)    Unreimbursed cardiology expenses to date - $100.00.
    (d)    Unreimbursed medical expenses at Excela Hospital - $120.00.

If the Wife elects to purchase medical insurance through the COBRA plan with PennDot, the cost will be $541.00 monthly.

Master's Report, at 5-6, 7-8.

The Master also recommended the equal division of Husband's pension that was not yet in pay status. Wife's attorney was directed to prepare a QDRO so that at the time Husband retired, Wife would receive her share.[2] Additionally, to cover a partial amount of Wife's attorney's fees, the Master recommended that Husband pay $4,500.00 to Wife's counsel. The Master further recommended that Husband pay alimony to Wife for a four-year period, the first two years at $1,000.00 per month and the third and fourth

_____

[2] At the time of the hearing, Husband was 56 years old and was not eligible to retire until he reached the age of 60 at a minimum. Wife was 61 at the time of the hearing.

years at $750.00 per month.  Lastly, the Master recommended that Husband

pay $1,000.00 to Wife for unreimbursed medical expenses.

Both parties filed exceptions to the Master's Report.  After oral

argument and the submission of briefs, the court denied all exceptions,

determining that:

> [t]he Master properly applied the enumerated factors outlined for equitable distribution in 23 Pa.C.S.[] § 3502 and for alimony in 23 Pa.C.S.[] § 3701 to the facts of the case that each party presented.  The Master reached an equitable result through application of those provisions.  In addition, the Master's Report adequately considered applicable case law and cited said case law in support of his recommendations.  … Therefore, this Court relied on the recommendations outlined in the Master's Report….

Trial Court Opinion, 12/6/13, at 3.  Essentially, the court adopted the

Master's Report as its own and issued a decree in divorce on October 4,

2013.  Both parties filed appeals and timely submitted court ordered concise

statements of errors complained of pursuant to Pa.R.A.P. 1925.

Wife raises the following issues for our review:

> A.  Considering Wife's advanced age, extremely poor health, lack of economic capability and the existing [o]rder of [c]ourt dated October 1, 2010, was it error for the Master and the lower [c]ourt to deny payment in full for [W]ife's unreimbursed medical expenses?

> B.  Was it also error to deny [H]usband's earning capacity and [W]ife's needs in the calculation of monthly award of alimony and its duration?

> C.  Was it error for the [c]ourt, considering the [W]ife's advanced age, extremely poor health, economic disability, not to divide the marital assets between the parties so as to provide for

the reasonable and future medical needs of the [W]ife and promote economic justice?

D. Was it also error for the [c]ourt considering the [W]ife's advanced age, extremely poor health, economic disability and [H]usband's ability to pay not to award the [W]ife cost, counsel fees, and expenses in their entirety?

Wife's Brief at 6.

Husband likewise raises four issues for our review:

1. Whether the trial court committed an error o[f] law or abused its discretion in directing Husband to pay to Wife $1,000.00 … for un-reimbursed medical expenses, where the Husband had good health insurance coverage and the Wife either went outside of the coverage offered or elected "upgrades" on covered items of care[?]

2. Whether the trial court committed an error o[f] law or abused its discretion in awarding payment of attorney's fees when Wife has received prior to the Master's hearing the majority of the proceeds from the sale of the marital residence and is set to receive 74% of the escrowed funds[?]

3. Whether the trial court committed an error o[f] law or abused its discretion by awarding an additional 4 (four) years of alimony when she has already received 3 (three) of Alimony Pendent[e] Lite where the parties have been effectively separated for 10 (ten) years and Wife is eligible for Social Security Benefits in February of 2014[?]

4. Whether the trial court committed an error o[f] law or abused its discretion in awarding only 26% of the escrowed funds to Husband without any explanation or justification as to the rationale underlying that determination[?]

Husband's Brief at 21.

Generally, to address the types of issues raised in this appeal, we are

guided by the following:

> Our standard of review in assessing the propriety of a marital property distribution is whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure. An abuse of discretion is not found lightly, but only upon a showing of clear and convincing evidence.

*McCoy v. McCoy*, 888 A.2d 906, 908 (Pa. Super. 2005) (citations omitted).

When reviewing an award of equitable distribution, "we measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights." *Hayward v. Hayward*, 868 A.2d 554, 559 (Pa. Super. 2005). Moreover, it is within the province of the trial court to weigh the evidence and decide credibility and this Court will not reverse those determinations so long as they are supported by the evidence. *Sternlicht v. Sternlicht*, 822 A.2d 732, 742 (Pa. Super. 2003), *aff'd*, 876 A.2d 904 (Pa. 2005). We are also aware that "a master's report and recommendation, although only advisory, is to be given the fullest consideration, particularly on the question of credibility of witnesses, because the master has the opportunity to observe and assess the behavior and demeanor of the parties." *Moran v. Moran*, 839 A.2d 1091, 1095 (Pa. Super. 2003) (citing *Simeone v. Simeone*, 551 A.2d 219, 225 (Pa. Super. 1988), *aff'd*, 581 A.2d 162 (Pa. 1990)).

The first issues raised by both Husband and Wife concern the payment by Husband to Wife of a portion of her unreimbursed medical expenses. Wife contends that pursuant to a court order, dated October 1, 2010,

Husband was required to pay 100% of her unreimbursed medical expenses.[3] She further asserts that she introduced documentation revealing that from 2011 through 2013 she expended a total of $3,495.02 for unreimbursed medical expenses, including "prescriptions, eye care, cardiology, dental work, blood work and glasses…." Wife's Brief at 14. Wife also relies on a decision issued by the Social Security Administration in which she alleges she was found to be totally disabled and unable to work. Thus, she claims that Husband should have been required to reimburse her in the amount of $3,495.02, not merely the $1,000.00 as ordered by the court.

Husband responds to Wife's argument contending that she failed to pay the initial $250.00 per year that triggered Husband's obligation under the October 1, 2010 order. Husband also asserts that despite the "good insurance coverage through Husband's employer, … Wife continued to go outside of the plan or purchase care that was not covered within the insurance policy." Husband's Brief at 6. Husband further indicates that the court's requiring him to pay the $1,000.00 for unreimbursed medical expenses was an abuse of discretion in that Wife sought "upgrades" and

_____

[3] The trial court's October 1, 2010 order states in pertinent part that:

> 9. Husband shall continue to provide Wife with medical insurance coverage until further Order of Court. Until further Order of Court, Husband shall be responsible for 100% of Wife's unreimbursed medical amounts after the first $250.00 per year.

failed to resubmit medical expenses to Husband's insurance carrier as she was directed to do by a court order, dated February 3, 2011. *Id.* at 24. Husband further indicates that the court did not determine whether Wife's extra medical expenses were reasonable and necessary.

The case cited by Husband, ***Kessler v. Helmick***, 672 A.2d 1380 (Pa. Super. 1996), aids this Court in the resolution of this issue, stating:

> A court may require that an obligor pay a designated percentage of a spouse's reasonable and necessary health care expenses. 23 Pa.C.S.A. § 4324. … Under section 4324, "both the question of whether to require the obligor spouse to pay these expenses, as well as the question of the proper percentage to assess, is within the discretion of the trial court." ***Lyons v. Lyons***, 401 Pa. Super. 271, 284, 585 A.2d 42, 49 (1991).

*Id.* at 1385.

Here, the court was aware of the parties' entire financial situation. Under the circumstances presented, neither party has convinced us that the court abused its discretion by ordering Husband to pay $1,000.00 to Wife for unreimbursed medical expenses. Therefore, we conclude that both Wife's and Husband's first issues do not afford either party any relief.

We next turn to Wife's second issue and Husband's third issue, both of which concern the court's award of four years of alimony to Wife. We conduct our review of these issues according to the following standard:

> The role of an appellate court in reviewing alimony orders is limited; we review only to determine whether there has been an error of law or abuse of discretion by the trial court. Absent an abuse of discretion or insufficient evidence to sustain the

- 10 -

support order, this Court will not interfere with the broad discretion afforded the trial court.

*Smith v. Smith*, 904 A.2d 15, 20 (Pa. Super. 2006).  Likewise:

The purpose of alimony is not to reward one party and to punish the other, but rather to ensure that the reasonable needs of the person who is unable to support himself or herself through appropriate employment, are met.  In determining the nature, amount, duration and manner of payment of alimony, the court must consider all relevant factors, including those statutorily prescribed for at 23 Pa.C.S.A. § 3701.  Alimony is based upon reasonable needs in accordance with the lifestyle and standard of living established by the parties during the marriage, as well as the payor's ability to pay.

*Isralsky v. Isralsky*, 824 A.2d 1178, 1188 (Pa. Super. 2003).

*Dalrymple v. Kilishek*, 920 A.2d 1275, 1278-79 (Pa. Super. 2007).

We also consider the Master's discussion regarding the award of alimony.  After setting forth the law as it relates to alimony, the Master stated his reasoning as follows:

The Master considered all 17 factors as set forth in Section 3701 of the Divorce Code in determining whether the Wife should be awarded alimony.  The parties resided together for approximately 22 years when the Complaint was filed.  The Wife is 61 years old, being approximately 4 years older than the Husband.  The earliest the Wife may receive Social Security is when she attains the age of 62.  She is not eligible for Social Security Disability payments or Supplemental Social Security income since her assets exceed the limits to receive either benefit.  The Wife testified regarding various medical problems.  She stated that she would like to work if she were able, but does not feel that she could work because of her health.

Once the divorce is granted, the Wife will lose her medical insurance and will be required to obtain a policy of her own.  The Master gave great weight to the disparity of the earnings of the

> parties. The Husband earned approximately $54,000.00 a year, while the Wife receives APL [alimony pendente lite] of approximately $975.00 per month. Since the Wife will eventually be receiving Social Security payments and her share of the Husband's pension, the Master does not believe that permanent alimony is in order. However, it would be purely speculative to determine at what age the Husband will retire. The Master also gave great weight to Wife's medical conditions.

Master's Report, at 14-15.

Wife explains that she requested permanent alimony, due in part because of the decision by the Social Security Administration that she was totally disabled and cannot work. She claims that the amount of the APL payments of $975.00 per month received from Husband was insufficient to cover her monthly expenses and, therefore, with the additional costs to pay for future medical insurance, she will be even less likely to be able to meet her monthly expenses. Wife also references her age (61 at the time of the hearing), the number of years until she is eligible for Medicare, as well as the time period before she can access the money she will receive as her portion of Husband's PSERS pension. Essentially, Wife argues that she is solely dependent on the alimony payment until she is eligible to receive social security and her portion of husband's pension.

Husband's response to Wife's argument regarding permanent alimony centers on the fact that the Social Security Administration did not determine that Wife was totally disabled. Rather, he contends that now that she is 62 years old, she is eligible to receive social security, albeit at a reduced rate, and that she is capable of light duty work, *i.e.*, she has an earning capacity.

Additionally, Husband argues that the court's alimony award was contrary to the weight of the evidence and was excessive, because the Master found that Wife is able to perform a minimum wage job. Husband also contends that Wife should have been imputed with an earning capacity of $1,666.56.00 per month, representing what she could earn at a minimum wage job plus monthly social security benefits of $409.90. Thus, considering Wife's earning capacity and her present eligibility to begin social security benefits, which Husband contends was not taken into account by the court, Husband asserts the court abused its discretion by simply adopting the Master's recommendation.

Again, neither party has convinced us that the findings and conclusion reached by the Master and their adoption by the court was in error. The record supports the findings and it is apparent that the pertinent factors listed in 23 Pa.C.S. § 3701 were considered. Therefore, we conclude that the court did not abuse its discretion in awarding alimony to Wife for the four-year period.

We next turn to Wife's fourth issue and Husband's second issue. Both parties contest the amount of attorney's fees awarded to Wife. We review an award of attorney's fees pursuant to the following principles:

> We will reverse a determination of counsel fees and costs only for an abuse of discretion. The purpose of an award of counsel fees is to promote fair administration of justice by enabling the dependent spouse to maintain or defend the divorce action

> without being placed at a financial disadvantage; the parties must be "on par" with one another.
>
> Counsel fees are awarded based on the facts of each case after a review of all the relevant factors. These factors include the payor's ability to pay, the requesting party's financial resources, the value of the services rendered, and the property received in equitable distribution.

*Teodorski v. Teodorski*, 857 A.2d 194, 201 (Pa. Super. 2004), quoting *Anzalone* [*v. Anzalone*, 835 A.2d 773,] 785-786 [(Pa. Super. 2003)]. "Counsel fees are awarded only upon a showing of need." *Teodorski* at 201, *quoting* *Harasym v. Harasym*, 418 Pa. Super. 486, 614 A.2d 742, 747 (Pa. Super. 1992). "In most cases, each party's financial considerations will ultimately dictate whether an award of counsel fees is appropriate." *Plitka v. Plitka*, 714 A.2d 1067, 1070 (Pa. Super. 1998). Also pertinent to our review is that, "in determining whether the court has abused its discretion, we do not usurp the court's duty as fact finder." *Teodorski* at 201, *quoting* *Verdile v. Verdile*, 370 Pa. Super. 475, 536 A.2d 1364, 1369 (Pa. Super. 1988).

*Busse v. Busse*, 921 A.2d 1248, 1258 (Pa. Super. 2007).

The Master set forth the factual basis for the award of attorney's fees and explained his reasoning for recommending that Husband pay to Wife $4,500.00 toward her attorney's fees, stating:

> The Wife filed a claim for counsel fees. Mark Sorice, attorney for the Wife, submitted a bill in the amount of $14,756.00. Pursuant to Order of Court, the Husband paid preliminary counsel fees to the Wife's attorney in the amount of $500.00. The Wife requested counsel fees because of the vexatious and litigious nature of the proceedings to cover the total cost of attorney's fees incurred. The record indicates that the Wife was required to attend four all-counts conferences and a Motion for Enforcement of Martial [*sic*] Settlement Agreement that the Court ruled was without merit, and most recently, a Petition to Compel the [Husband] to Produce his W-2 which he had willfully refused despite the Pennsylvania Rules of Civil Procedure. Mr. Sorice charges $200.00 per hour which the

Master believes is reasonable and consistent with the billing of attorneys performing domestic relations work in Westmoreland County.

. . .

In making his decision on an award of counsel fees, the Master considered the value of the marital property to be awarded to the Wife, although the Wife will receive some cash in the Master's recommended distribution, most of her distribution will [be] deferred until the Husband retires. The overriding factor in the master's recommendation for the award of counsel fees is the disparity of income between the parties. The Husband, although he did not submit his W-2 form, has a base salary of slightly over $54,000.00 a year, not including overtime. Therefore, the master will recommend an award of $500.00 counsel fees.

Master's Report, at 12, 13. Again, the trial court acknowledged that the Master properly applied the alimony factors found in 23 Pa.C.S. § 3701 and adopted the Master's recommendation.

Wife argues that Husband should have been ordered to pay all of her attorney's fees and the costs associated with this litigation due to Husband's vexatious conduct. She asserts that Husband has the ability to pay and relies on the amount of Husband's earnings and his refusal to advance any sums for the costs of the Master's hearing, which were paid from the marital assets held in her attorney's escrow account.

In response to Wife's assertions, Husband first identifies a court order, dated February 14, 2013, that noted the parties consented to the payment to the Master of $3,000.00 from the marital funds held in the escrow account. Recognizing a balance between need and ability to pay, Husband

also claims that Wife overlooks the fact that she will receive a larger percentage of the marital assets and that he is required to pay in addition to his own attorney's fees, $1,000.00 per month alimony, $1,000.00 of unreimbursed medical expenses, and $4,500.00 of Wife's attorney's fees. Husband also highlights the fact that Wife received $48,000.00 from the sale of the marital residence, has been receiving an APL payments from him of $975.00 per month for 39 months, was awarded $42,053.00 from the escrowed funds, $5,000.00 from the parties' checking account, and will receive half of his pension. Thus, Husband claims that Wife has substantial assets, *i.e.*, is not in actual need, and should not have been awarded any attorney's fees. Moreover, Husband contends that the reliance on the disparity of income, without more, is an insufficient basis upon which to award counsel fees.

Again, we concur with the decision reached on the attorney's fees issue. The Master and the court were aware of the respective financial positions of the parties and arrived at a reasonable solution. Therefore, we conclude that the trial court did not abuse its discretion in awarding $4,500.00 in attorney's fees to Wife.

Lastly, we reach the parties' claims directed at the division of the marital property. Wife argues that the court abused its discretion by not awarding her a larger percentage of the marital assets. Specifically, she contends that the award to "[W]ife of 51% of the marital estate would be

patently unfair considering the limited work history of the [W]ife, her non-existent future earning capacity, the [W]ife's age, poor physical condition as well as the [H]usband's younger age, good physical condition and good earning capacity." Wife's brief at 20-21. Essentially, she claims that to promote economic fairness she should have been awarded a larger percentage of the marital assets.

Husband notes that in Wife's argument she does not mention her earning capacity and her eligibility to receive social security benefits. He identifies the award to Wife of 76% of the escrowed funds, and also asserts that the trial court did not "set forth the percentage of distribution for each asset ordered as well as the reason for the distribution[,]" which he contends is required pursuant to 23 Pa.C.S. § 3506.[4] Husband's brief at 37. Specifically, he acknowledges that the Master indicated that all pertinent factors were considered, but he argues that the trial court "provided no indication as to what factors it considered or even the weight of one factor among many." *Id.* Husband suggests that the proceeds from the sale of the marital residence was divided 55% to Wife and 45% to Husband.

_____

[4] Section 3506 of the Divorce Code provides:

> In an order made under this chapter for the distribution of property, the court shall set forth the percentage of distribution for each marital asset or group of assets and *the reason for the distribution ordered*.

23 Pa.C.S. § 3506 (emphasis added).

- 17 -

However, it appears that Husband's main point of contention is that no reasons were articulated by the court for the distribution of the escrowed funds as required by section 3506.

We disagree. Although we recognize that neither the Master nor the court specified on a consistent basis the reasons for the distribution of each marital asset, the Master's reasoning is evident. For example, the Master indicated that the award of counsel fees rested on the "disparity of income between the parties." Master's Report at 13. This reasoning in addition to Wife's health issues and her compromised earning ability, plus Husband's ability to continue to earn a living, certainly appear to be a basis for the distribution of the marital property. Our review of the record in this case reveals that the evidence supports the determinations arrived at by the Master and adopted by the trial court. Obviously, neither party is satisfied, but we conclude that under the circumstances here, the court did not abuse its discretion. Rather, its award effectuated economic justice between the parties. Accordingly, we affirm the order from which the parties appealed.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

- 18 -

Date: <u>9/2/2014</u>