516 A.2d 33

Jennie Marie TERIBERY

v.

George Wilbert TERIBERY, Appellant.

Superior Court of Pennsylvania.

Submitted July 14, 1986.

Filed Sept. 19, 1986.

Donald W. Grieshober, Erie, for appellant.

Kevin J. Kingston, Erie, for appellee.

Before WATKINS, HOFFMAN and HESTER, JJ.

HESTER, Judge:

Appellee, Jennie Marie Teribery, filed a complaint in divorce against appellant, George Wilbert Teribery, on January 12, 1983. Appellee's complaint included claims for support, alimony, equitable distribution of marital property, alimony pendente lite, counsel fees and expenses.

Following a hearing on May 3, 1983, a master filed a report recommending that appellant pay $188.00 weekly as alimony pendente lite to appellee. Appellant filed exceptions from the master's report; the trial court deferred disposition until a final master's report was filed on remaining claims.

A subsequent master's hearing was conducted on alimony and distribution of marital property. The master recommended that appellee be awarded the marital house, household goods, certificate of deposit in the amount of $10,-000.00, silver coins, joint checking account and riding lawn mower. Appellant was to be awarded his pension plan, automobile, guns and cabinet, bow and 1982 income tax refund. Appellee was also awarded alimony in the amount of twenty five percent (25%) of appellant's net income. Both parties filed exceptions from this master's report.

By order dated November 15, 1984, the trial court dismissed appellant's exceptions to the alimony and equitable distribution report. Appellee's exceptions were granted to the extent that 1) alimony was increased to fifty percent (50%) of appellant's net income subject to reduction by appellee's income, and 2) appellee was awarded fifty percent (50%) of the value of appellant's pension plan accruing from the date of marriage to the date of separation.

Shortly thereafter, appellant's exceptions from the master's report on alimony pendente lite were dismissed by order dated November 19, 1984. Appellant filed a timely appeal at 1611 Pittsburgh 1984 from the orders of November 15, 1984, and November 19, 1984.

Following appellant's appeal, appellee filed a petition with the trial court for enforcement of alimony pendente lite. The petition was granted on December 28, 1984, and appellant was ordered to continue paying alimony pendente lite of $188.00 per week while the appeal was pending. Appellant filed an appeal from this order at 124 Pittsburgh 1985.

Thus, two appeals concerning three trial court orders have been consolidated for review. After both appeals

were filed, appellant filed a petition in trial court and this court to revoke his affidavit of consent to the divorce. We remanded this petition to the trial court for complete disposition. The petition was denied by the trial court, and appellant's exceptions were also denied by order of December 11, 1985. No appeal was filed from that order.

Appellant raises the following arguments: 1) he has the unconditional right to revoke his affidavit of consent, and such revocation would render moot all orders regarding alimony, counsel fees, expenses and equitable distribution of marital property; 2) the distribution of marital property was inequitable; 3) the trial court erred in awarding alimony to appellee at the rate of fifty percent (50%) of appellant's net income; 4) the order for alimony pendente lite was confiscatory; and 5) the trial court had no authority to rule on alimony, counsel fees, court costs and equitable distribution of marital property when appellant had withdrawn his affidavit of consent.

Appellant cites *Hoffman v. Hoffman,* 350 Pa.Super. 280, 504 A.2d 356 (1986), as support for his contention that he has the absolute right to withdraw his affidavit of consent. The *Hoffman* panel noted in dictum that a plaintiff cannot withhold her consent to the divorce while maintaining a claim for alimony pendente lite. *Hoffman* further held that a trial court cannot dismiss a divorce complaint due to the plaintiff's refusal to file an affidavit of consent unless the court first notifies the plaintiff of the consequences of not filing a written consent.

*Hoffman* does not support appellant's contention that he can negate prior orders for alimony and equitable distribution by withdrawing his affidavit of consent. The plaintiff in *Hoffman* refused to file an affidavit, and no orders on ancillary claims had been entered. Here, however, appellant had filed his affidavit, a divorce decree issued and then alimony and equitable distribution were determined. Appellant is dissatisfied with the alimony and equitable distribution orders, and has attempted to void them and remove the jurisdiction of this court by withdraw-

ing his affidavit. There is no precedence for this course of action.

At the outset of the hearing on alimony pendente lite, the parties agreed on the record to sign affidavits of consent. The parties later discussed the signing of affidavits at the hearing on equitable distribution. Appellant had executed his affidavit prior to the hearing and his counsel remarked that "I would like to see [appellee's affidavit] signed." N.T. July 28, 1983, at 1. Appellee's affidavit was signed, and both parties presented their affidavits to the master for filing. The affidavits were filed, and a divorce decree was signed following disposition of exceptions on November 15, 1984.

It is apparent that appellant moved for a divorce under section 201(c) of the Divorce Code. In fact, the issue whether to grant a divorce was removed from the master when both parties submitted affidavits and left only alimony and equitable distribution for the master's disposition. Appellant does not complain that his affidavit was signed under duress, fraud or undue influence. His affidavit was knowingly, voluntarily and eagerly signed, and he seeks to withdraw it solely due to his displeasure with the alimony and equitable distribution orders. Appellant had the opportunity to challenge the divorce decree on appeal. He cannot negate the entire trial court proceedings by withdrawing his affidavit after he has used those proceedings in full.

Next, appellant argues that the distribution of marital property was inequitable as appellee allegedly was awarded ninety-seven (97%) percent of the marital property, and only three percent (3%) was awarded to him. In review of the equitable distribution order, we are mindful of the broad discretion accorded trial courts, and we will not disturb the ruling absent abuse of discretion. *Kleinfelter v. Kleinfelter*, 317 Pa. Super. 282, 463 A.2d 1196 (1983).

Appellant's assessment that he was awarded only three percent (3%) of the marital property is inaccurate. Appellant's calculation ignores the accrued economic value of his pension benefits. He maintains that since there was no

lump sum payment option under the plan and since the master did not consider the taxable nature of the monthly retirement benefit, it was error to value the plan as of the date of separation at $43,595.00.

An actuary was deposed by the parties on August 22, 1983. He considered appellant's age of fifty two, annual salary of $33,000.00, work history of thirty two years with the same employer and the pension plan terms in arriving at the present economic value of $43,595.00.

Appellant incorrectly argues that a present value cannot be placed on a pension benefit which is realized on a deferred distribution plan. In *Flynn v. Flynn*, 341 Pa.Super. 76, 491 A.2d 156 (1985), we held that the present uncollectability of a pension benefit does not preclude assigning it a present value. We defined present value in *Flynn* as the amount of money an employee would accept in return for relinquishing his rights to deferred distribution. We further noted that present value must be discounted by mortality, inflation, interest, probability of continued employment and vesting. The actuary here applied these factors in calculating present value. It was not necessary to apply the coverture fraction alluded to in *Flynn v. Flynn, supra,* and *King v. King,* 332 Pa.Super. 526, 481 A.2d 913 (1984). The coverture fraction is utilized to determine the portion of the present value which is attributed to the period from date of marriage to date of separation. Only one year prior to marriage was excludible from appellant's thirty two years of employment for purposes of identifying the non-marital portion of present value. Presumably, appellant does not argue that the coverture fraction was improperly excluded as that one year would constitute nominal value.

The value of marital property awarded appellee can be enumerated as follows:

| | |
|---|---:|
| Marital residence discounted by the mortgage balance and one-half fair rental value for months appellee resided there alone while appellant paid maintenance expenses | $19,185.03 |
| Certificate of deposit | 10,000.00 |
| Household goods and furnishings | 7,000.00 |
| Silver coin collection | 100.00 |
| Riding lawn mower | 675.00 |
| Joint checking account | 700.00 |
| One-half of appellant's pension benefits | 21,297.50 |
| | $58,957.53 |

Appellant's award is enumerated and valued as follows:

| | |
|---|---:|
| Rights in 1977 Oldsmobile Cutlass used to purchase 1979 Buick la Sabre | $ 450.00 |
| Guns and cabinets | 450.00 |
| Bow | 69.00 |
| 1982 Income Tax Refund | 349.00 |
| One-half of pension benefits | 21,297.50 |
| | $22,615.50 |

This calculation discloses that appellee was actually awarded seventy two percent (72%) of the marital assets while appellant was awarded twenty eight percent (28%). Although this distribution is unequal, it is not inequitable.

■ The Divorce Code at 23 P.S. § 401(d) provides ten factors which shall be considered in equitably dividing marital property. The trial court noted the relevant factors here by considering the thirty-one years of marriage, a marriage while both parties were teen-agers, the parties' failure to graduate from high school, the absence of significant property brought to the marriage, appellee's status as full-time homemaker for appellant and their six children, the parties' roughly equal ages, appellee's five-year history of employment outside the home, appellee's passive and dependent personality, appellee's major depressive disorder, appellee's lack of skill and training in the workforce, appellee's unsteady employment, appellant's steady employment, and appellant's good physical and mental health.

Of these factors, it is particularly significant to note that appellee had worked only five years prior to separation as an assembly line packer of dairy products. During those five years, she was unemployed for an average of six months each year, with one unemployment period lasting one year. Appellee's gross income for 1982 was $6,053.00 in earnings and $1,176.00 in sick pay. Conversely, appellant earned $33,500.00.

Appellee's age and personality diminish her opportunities for better employment. At age fifty-one, she is unlikely to upgrade her salary even with retraining. Furthermore, her treating psychiatrist testified that she was insecure and dependent. He also noted that her separation from appellant caused her to suffer from severe depression. She had been admitted to a mental health facility as an inpatient on four occasions during the year following separation. Her psychiatrist prescribed heavy dosages of antidepressant medication to combat her occasional suicidal inclinations. The pychiatrist expected appellee to recover from her mental disorder, but her timidity and dependent nature were irreversible.

Conversely, appellant had established an excellent work history over thirty-two years with the same employer. His periods of unemployment were negligible. He had significant seniority and practically no risk of being laid off prior to retirement. Appellant enjoyed good health and financial independence.

In light of these circumstances, the trial court did not err in its distribution of marital property. Accordingly, we reject appellant's argument that the equitable distribution order was inequitable.

Third, appellant argues that the trial court erred in awarding permanent alimony to appellee at the rate of fifty percent (50%) of his net income. Appellant particularly complains that the court considered, inter alia, his marital misconduct in awarding permanent alimony as there was allegedly no evidence of misconduct. Appellant complains

further that the alimony order is defective as it does not provide for contingencies such as death or appellee's receipt of disability benefits, sick pay or retirement benefits.

Although the trial court awarded appellee one-half of appellant's net pay, alimony was to be reduced by appellee's earnings. Alimony was ordered terminated at such time as appellee earns a net salary which is equal to or exceeds fifty percent (50%) of appellant's net income.

An alimony order is reviewed against the standard of abuse of discretion, and the trial court's role as trier of fact shall be viewed deferentially. *Mazzei v. Mazzei*, 331 Pa.Super. 432, 480 A.2d 1111 (1984).

In light of the parties' respective incomes, earning capacities, ages, health, education, standard of living, assets, and needs, we find no error in the award of alimony. *See* 23 P.S. § 501(b). *See Eck v. Eck*, 327 Pa.Super. 334, 475 A.2d 825 (1984), for a discussion of the imposition of alimony for a dependent spouse of advanced years, lack of education and limited work experience. Moreover, appellant's departure from the marital home is not the only evidence of misconduct. Depending on the circumstances, leaving the marital home may not constitute misconduct. However, appellant overlooks evidence of his infidelity. Although appellant denied his extramarital affairs, appellee testified to the contrary. The trial court obviously considered appellee's testimony more credible.

Furthermore, we do not agree with appellant that an alimony award must reflect all contingencies. Section 501(e) of the Divorce Code provides that any alimony order may be "modified, suspended, terminated, reinstated or a new order made" upon "changed circumstances." Should either party die or become disabled, for example, a petition for modification can be filed to reflect changed circumstances. Furthermore, an award of alimony shall not extend beyond the payor's death, unless the parties have agreed otherwise. *Chaney v. Chaney*, 343 Pa.Super. 77, 493 A.2d 1382 (1985).

The primary purpose of an alimony award is rehabilitative, not punitive. *Hess v. Hess,* 327 Pa.Super. 279, 475 A.2d 796 (1984). In reducing alimony by the amount appellee earns and terminating alimony when appellee earns more than fifty (50%) percent of appellant's net income, the order is indeed rehabilitative. It gives appellee sufficient time to adjust to the separation, respond to psychiatric treatment and improve her earning capacity.

Appellant's next argument is that the trial court erred in awarding appellee $188.00 per week as alimony pendente lite. The purpose of an alimony pendente lite award is to enable a dependent spouse to prosecute or defend a divorce action without causing financial havoc, *Sutliff v. Sutliff,* 326 Pa. Super. 496, 474 A.2d 599 (1984), or a delay in proceedings. *Orr v. Orr,* 315 Pa.Super. 168, 461 A.2d 850 (1983).

At the time of the hearing on alimony pendente lite, appellee was on sick leave and receiving weekly sick pay of $111.96. Her only other income was monthly interest of $80.00 earned on a certificate of deposit. Conversely, appellant was earning a net weekly wage of $435.99.

Appellee's monthly expenses included a mortgage payment of $162.63, automobile loan payment of $186.00 and electric utility payment of $121.00. Appellee's remaining expenses for food and clothing were insignificant. Appellant pays $300.00 per month for a hotel room, $280.00 for meals and $161.00 to his credit union. Appellant's monthly hotel expense of $300.00 included utilities, and there was evidence that rent was reduced by nearly fifty percent (50%) during the off tourist season. In light of the parties' respective incomes and expenses, we find no error in the alimony pendente lite order.[1]

Orders affirmed.

1. Appellant's final argument is that the trial court had no jurisdiction to enter orders on alimony pendente lite, alimony and equitable distribution because he later withdrew his affidavit of consent. This argument is meritless and does not require further comment due to

our holding that appellant could not withdraw his affidavit under these circumstances.