J-A22018-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| JOHN MASTRONARDO | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| MARY ANGELA MASTRONARDO | |
| Appellee | No. 377 EDA 2017 |

Appeal from the Order Entered December 22, 2016
In the Court of Common Pleas of Montgomery County
Domestic Relations at No(s): 2011-12245

BEFORE: BOWES, J., LAZARUS, J., and PLATT, J.[*]

MEMORANDUM BY LAZARUS, J.: **FILED JANUARY 22, 2018**

Appellant John Mastronardo ("Husband") appeals from the order, entered in the Court of Common Pleas of Montgomery County, granting Mary Angela Mastronardo's ("Wife") petition for contempt of the parties' Property Settlement Agreement ("PSA"), ordering Husband to pay Wife's counsel fees and denying Husband's counter-petition in contempt. We affirm.

The parties were married in 1991. Husband filed a complaint for divorce on May 5, 2011, and the court entered a divorce decree on April 4, 2013. During the marriage, Husband created the Mastronardo Family Trust ("the Trust") for the benefit of the parties' two children, who are now the adult

_____

[*] Retired Senior Judge assigned to the Superior Court.

beneficiaries of the Trust. The Trust holds title to the parties' condominium located in Boca Raton, Florida ("the Condo").[1]

On March 12, 2013, the parties signed the PSA, which set forth the terms of their property division; the PSA was incorporated into, but not merged with, the April 4, 2013 divorce decree, and it included provisions with respect to the Condo. PSA, 3/12/13, ¶ 1(a). In particular, the PSA provided that the Condo could not be encumbered, mortgaged or sold without notice to and consent of the parties' children. The PSA reads, in part:

**4.    Florida Condo**

(a)    The parties acknowledge that the [Condo] is part of, and subject to, the provisions of the [Trust] dated April 24, 2007. It is understood by the parties that, by its own terms, the trust is irrevocable.

(b)    Wife shall resign her position as Trustee of the [Trust] in accordance with Section Ten[]B. of the Trust document. Wife shall submit her written resignation to the Trust within seven (7) days of the execution of this Agreement.

\* \* \* \*

(d)    **The parties agree that the condo shall remain in trust for the parties' children, Maria and John, according to the terms of the Trust Agreement, and that the property shall not be encumbered, mortgaged or sold *unless both children agree and in accordance with the terms of the Trust Agreement*. The parties' children, Maria and John, shall have access to, and the enjoyment of, the property**.

---

[1] The Condo was purchased by Husband's brother and gifted to Husband for the benefit of the parties' children. N.T. Hearing, ***supra*** at 17.

(e) **The parties agree that all of the provisions of this Section shall be enforceable in the Montgomery County Court of Common Pleas notwithstanding the location of the Condo and artwork in Florida**.

\* \* \* \*

**20. Miscellaneous**

(c) This Agreement contains the entire understanding of the parties relating to their rights and obligations, and is binding on the parties, their successors, assigns, heirs, executors, administrators, and personal representatives. Any prior oral or written agreements between the parties are merged into and superseded by this Agreement.

PSA, 3/12/13, at 2 (emphasis added).

On June 28, 2016, Wife filed her petition for contempt. She claimed Husband violated the PSA by obtaining a mortgage on the Condo without notice to the parties' children. Husband filed a counter-petition for contempt, claiming Wife used a marital credit card, with Husband's name as primary cardholder, without his knowledge or permission, and that Wife's delinquent payments adversely affected his credit. Husband also claimed "Wife maintained a secret brokerage account that was not disclosed at equitable distribution." Appellant's Brief, at 10.

At the contempt hearing, Husband stipulated that Kenneth R. Schuster, as Trustee, took out a mortgage on the Condo in the amount of $375,000. The mortgage was signed on March 17, 2016 and recorded on March 28, 2016. Mortgage, 3/17/16; N.T. Hearing, 12/13/16, at 14-15.[2] The mortgagee was

_____

[2] The promissory note secured by the mortgage provides:

a private person, and the term was for fifteen years at an interest rate of 10%. *Id.* at 28. The loan amount was $375,000, with a provision that the amount of the mortgaged loan could increase to $750,000. *Id.* at 15-16. Husband's counsel explained that the Trust grants permission for Husband "to use this money if he needed to use it [b]ut he has to get consent of the beneficiaries . . . the parties' adult children." *Id.* at 17.

Wife testified that when she found out about the mortgage, she contacted the children and they indicated to her that they had had no prior notice of the mortgage. *Id.* at 19. At the hearing, Husband produced signed consents from both children; the consents, however, were dated July 9, 2016, over one year after the mortgage was taken and *eleven days after Wife had filed her petition for contempt.* *Id.* at 23-25. *See* Letter from Husband's Attorney to Wife's Attorney, 7/20/16.[3] The "consent forms" are notarized

---

**10. Future Advances.** For the purposes permitted by applicable law and upon the request of the Borrower(s), Lender, at Lender's option, prior to the release of this Mortgage, may make further advances so that the total amount so increased may equal up to Seven Hundred Fifty Thousand Dollars ($750,000.00) hereunder with interest thereon, which advances shall be secured by this Mortgage and evidenced by promissory notes stating that said notes with such increased amount are secured by this Mortgage.

Mortgage, 3/17/16.

[3] The letter, from Cynthia Bashore, Esq., to Carolyn R. Mirabile, Esq., reads, in part:

statements from the parties' adult children, dated July 9, 2016, stating that each gives "permission to the Trustee, Kenneth R. Schuster, to obtain a mortgage secured by the condominium . . . in the amount of $375,000." There is no indication in the consents that the children were consulted or consented to the encumbrance prior to the mortgage date.

Additionally, Wife's attorney read into the record the letter she sent to Husband's attorney on August 22, 2016, asking for documentation that the mortgage would be paid off in the event of Husband's death, to confirm Husband's indication of such at a prior court conference. The letter states:

> During the conference with Judge Coonahan, you indicated your client has "taken care of the situation" in which if he passes away, the loan against the Florida condo will be paid off. Please provide the documentation which indicates the loan will be paid off upon his death. It is also my understanding a new Trust Agreement has been signed. Pursuant to the [PSA], the Condo was to remain in trust for the children. Please provide a copy of the full Trust Agreement confirming the Condo is in trust for the children.

N.T. Hearing, 12/13/16, at 30-31. Wife testified that she was never provided with a copy of the new Trust Agreement, and there was no response to the August 22, 2016 letter. *Id.* at 31.

---

> Dear Ms. Mirabile: On June 28, 2016 you filed a Petition for Contempt on behalf of your client, the gravamen of which relates to claims that my client obtained a mortgage on the Boca Raton condo without the parties' children's permission, and purported violation of the trust Agreement. Enclosed please find a duly executed written consent for the mortgage. Please have your client withdraw her frivolous Petition forthwith.

Following the contempt hearing, the Honorable Arthur R. Tilson entered an order finding Husband in contempt. The court's order also states:

Husband is prohibited from further encumbering, mortgaging, selling, or otherwise interfering with the Condo[.]

Paragraph ten "10" of the Mortgage Note dated March 18, 2016 shall be amended so that no further monies shall be borrowed against the Boca Raton property. Said amended note shall be recorded forthwith and verification of same shall be provided within twenty (20) days.

Husband shall provide verification of ownership of two life insurance policies naming the children as beneficiaries as well as confirmation of annual premiums being paid on a yearly basis. Proof of said life insurance policies and payment shall continue until said mortgage is paid off. Proof of annual premiums being paid shall include the front and back of the cancelled check for the full premium amount within five (5) days of payment.

Husband shall provide a true and correct copy of the Mastronardo Family Trust as well as any amendments including but not limited to those which authorize the transfer of the Trustee to Kenneth R. Schuster.

Wife shall be entitled to Attorneys' Fees in the amount of $7,550.00 plus 3.5 additional hours at $360.00 per hour for a total of $8,810.00.

Order, 12/21/16. The court also denied Husband's counter-petition for contempt against Wife. Husband filed a motion for reconsideration, which was denied, and a timely notice of appeal and Pa.R.A.P. 1925(b) statement of errors complained of on appeal. Husband raises the following issues for our review:

1. Did the trial court abuse its discretion when it found Husband in contempt of the Property Settlement Agreement and ordered him to pay Wife's attorney's fees, when

Husband acted in conformity with the terms of the Trust Agreement in obtaining the mortgage?

2. Did the trial court commit an error of law by relying upon evidence outside of the Property Settlement Agreement to ascertain its meaning?

3. Did the trial court have jurisdiction to modify the terms of the parties' Property Settlement Agreement in its December 21, 2016 order finding Husband in contempt, or commit an error of law when it changed the terms of the parties' Property Settlement Agreement?

4. Did the trial court abuse its discretion when it precluded from evidence statements from the parties' adult children and Husband's Trust attorney, which were not offered for their truth, but rather to show Husband's state of mind and belief that he complied with the Property Settlement Agreement and the Trust when he had the Trust obtain the mortgage on the Condo?

5. Did the trial court abuse its discretion when it dismissed Husband's counterclaim and amended counterclaim after uncontested evidence was presented showing that Wife made charges on a marital credit card and became delinquent on payments after the parties divorced; and that wife maintained a brokerage account during the marriage in her own name, which she failed to disclose at equitable distribution?

Appellant's Brief, at 5-6.[4]

At the hearing, Husband argued that the children's consent was obtained prior to the March 17, 2016 mortgage date, and that the subsequent written consent forms, dated July 9, 2016, were only obtained in response to Wife's contempt petition "as evidence of the consent that he had already obtained[.]" N.T. Hearing, 12/13/16, at 49. Husband testified as follows:

_____

[4] We have re-ordered and consolidated the issues raised for ease of discussion.

- 7 -

Q:    John, first, did you obtain your children's consent or did you speak with your children prior to taking out the mortgage that we're talking about today?

A:    Yes, I did.  I approached them with the idea that, quite frankly, when I was released from prison in December and I started working here in January in the insurance company -- we do other things besides insurance -- I was given an opportunity to buy into a portion of a business, so I explained that to both my children and really I particularly was addressing my daughter in regards to this.  My son as well, of course.  My daughter suffered and does suffer from bipolar disorder.  She's now gone through two jobs in three years.  So it was my idea that if I did establish an ownership in the business, an insurance business, and because I'm a convicted felon,[5] I cannot write insurance.  My daughter, and maybe down the line my son can come and work in the business and for all the referrals I'm giving other people in the office, I can give to them and they can get licensed and my daughter can make a living and she can also at the same time be under my wing.  So yes, I did approach them both and I told them what my plans are[.]

* * * *

Q:    []After you had discussions with your daughter and your son with respect to your plans about obtaining a mortgage and then buying into a business so they can work there in the future and build a family business, what did you do?  Did you get the mortgage or not?

A:    Not at that time.  What I did, I consulted two people, Ken Schuster, who was the executor of the trust.  And Ken referred

_____

[5] Husband testified that he was a convicted felon, charged with bookmaking, money laundering and Racketeer Influenced and Corrupt Organizations (RICO) violations, and that he had served eight months in jail.  N.T. Hearing, 12/13/16, at 73, 76-77, 86.  On cross-examination, Husband acknowledged that under the terms of his probation, he is precluded from incurring "new credit charges or opening additional lines of credit." *Id.* at 109-10. Husband also acknowledged that under the terms of his probation he "shall not encumber or liquidate his interest in any assets unless the proceeds are to be used in payment of defendant's fine obligation." *Id.* at 111.  Husband also reiterated, however, that he does not "have an interest in any property." *Id.*

me to Walter Weir.  Walter is the actual attorney who wrote the trust[.]

* * * *

Q:    After you spoke with the attorneys, John, what did you do?

A:    The trust was now in a position – I asked – I told my kids what had to be done and what was necessary.  I had to get their consent.  And at that point, the trust made the loan, not me.

* * * *

Q:    And it was put in progress after you spoke with your children and the two attorneys, correct?

A:    Right. . . . We had an in-house attorney here and I had a document drawn up with respect [--] stating that if something did happen to me, the company would pay the trust loan.

* * * *

Q:    So is that document called Addendum to Funding Partner Agreement?[6]

---

[6] This document reads, in relevant part:

**X. Contingencies upon Death or Demise:**
In the event of the death, demise, or incapacitation of Partner with such event resulting in the liquidation of Partner's available principal balance, plus accrued interest, the proceeds of that liquidation will be disbursed to the Partner, the Partner's estate, or to Partner's beneficiary.  However, prior to any funds being disbursed to the Partner, the Partner's estate, or to Partner's beneficiary, any funds available for distribution under the terms of this section must first be used to pay on the mortgage of the Partner's primary residence, with said primary residence being 2800 South Ocean Boulevard, Suite 5-F, Boca Raton, Florida.  Partner, Partner's estate, or Partner's beneficiary shall not be entitled to any disbursement of the funds under the terms of this section unless and until the mortgage balance on Partner's primary residence has been paid in full.

A:    Yes[.]

*Id.* at 60-67.

Husband also testified that he had told Wife that if she did not withdraw her petition for contempt, he would cancel his life insurance policies, stop paying the children's medical bills and health insurance and stop giving the children money. **Id**. at 112. Finally, he also stated that he told his children "the exact same thing." **Id**.

In his first two issues, Husband argues the trial court abused its discretion when it found him in contempt of the PSA and ordered him to pay Wife's attorney's fees, and that the court erred in relying on evidence outside the PSA to ascertain its meaning. We find each of these claims meritless.

Our review of contempt orders is governed by an abuse of discretion standard. **Hyle v. Hyle**, 868 A.2d 601 (Pa. Super. 2005). A trial court abuses its discretion when its findings are not supported by the record, and/or there

---

Addendum to Funding Partner Agreement Between Innovative Dealership Solutions and John Mastronardo, 7/15/16. The Funding Partner Agreement and Addendum were both signed by Husband and Henry Nemanich, the Chief Executive Officer of Innovative Dealership Solutions. Wife testified that she knew Nemanich, that he was a friend of Husband's, that he had sold two one-million dollar life insurance policies to Husband (children were beneficiaries), that he is the same person that Husband is in his insurance business with, and that she has personal knowledge that Nemanich is no longer a licensed broker in Florida as a result of "misappropriated funds from clients that he has accounts totaling three million dollars." *Id.* at 118-19. Husband testified that Nemanich "only does brokerage accounts. He does not do insurance." *Id.* at 127. He clarified that "Ted Taddei is the one who wrote my insurance policy[.]" *Id.*

- 10 -

has been a capricious disbelief of the credible evidence. This Court will reverse only upon a plain abuse of discretion. *Id.*

Parties to a marriage settlement agreement may enforce their agreement under the Divorce Code. Section 3105 of the Divorce Code, "Effect of agreement between parties" states, in part:

> **(a) Enforcement.—**A party to an agreement regarding matters within the jurisdiction of the court under this part, whether or not the agreement has been merged or incorporated into the decree, may utilize a remedy or sanction set forth in this part to enforce the agreement to the same extent as though the agreement had been an order of the court except as provided to the contrary in the agreement.

23 Pa.C.S. § 3105. Section 3502(e) describes the powers of the trial court to enforce an agreement between the parties:

> **(e) Powers of the court.—**If, at any time, a party has failed to comply with an order of equitable distribution, as provided for in this chapter or with the terms of an agreement as entered into between the parties, after hearing, the court may, in addition to any other remedy available under this part, in order to effect compliance with its order:
>
> > (1) enter judgment;
> >
> > (2) authorize the taking and seizure of the goods and chattels and collection of the rents and profits of the real and personal, tangible and intangible property of the party;
> >
> > (3) award interest on unpaid installments;
> >
> > (4) order and direct the transfer or sale of any property required in order to comply with the court's order;
> >
> > (5) require security to insure future payments in compliance with the court's order;
> >
> > (6) issue attachment proceedings, directed to the sheriff or other proper officer of the county, directing that the person

named as having failed to comply with the court order be brought before the court, at such time as the court may direct. If the court finds, after hearing, that the person willfully failed to comply with the court order, it may deem the person in civil contempt of court and, in its discretion, make an appropriate order, including, but not limited to, commitment of the person to the county jail for a period not to exceed six months;

(7) **award counsel fees and costs**;

(8) attach wages; or

(9) **find the party in contempt.**

23 Pa.C.S. § 3502(e) (emphasis added).

Here, the parties specified in their PSA that it was "understood and agreed by the parties that this [PSA] may be enforced by the Court." PSA, 3/12/13, at ¶ 17(a). It is clear from our reading of the PSA and the testimony from the contempt hearing that the parties intended the trust to be irrevocable, that the trust property was for the benefit of the adult children and that the parties intended that the property not be "encumbered, mortgaged or sold" unless both children consent. PSA, 3/12/13, at ¶ 4(d). Husband seeks to redefine the concept of consent. He argues that the PSA does not "require that the children provide their consent prior to the property being encumbered." Husband's Brief, at 13. He claims that consent obtained after-the-fact is, nonetheless, consent. It is not. As the trial court clarified, the written consent forms do not prove that the mortgage was procured with the consent of the children; the forms prove only, assuming authentication,

that the children indicated their agreement after the mortgage was obtained.[7]

*Id.* at 47-50. To the extent that Husband argues in his motion for reconsideration that in fact he obtained consent prior to the Trust taking out the mortgage on the Condo, the trial court found Husband's testimony not credible. **Hyle**, **supra**.

The court's findings are supported in the record. We conclude, therefore, that the court did not abuse its discretion in finding that Husband's act of mortgaging the Condo without the prior consent of the parties' adult children was in violation of the PSA. **Hyle**, **supra**. Moreover, the court was authorized to award Wife counsel fees. **See** PSA, 3/1/13, at ¶ 17(b); **see also** 23 Pa.C.S. § 3502(e)(7).

Further, Husband's argument that the court erred in looking beyond the language of the PSA to determine its meaning is meritless. It is well-established that the paramount goal of contract interpretation is to ascertain and give effect to the parties' intent. **Lyons v. Lyons**, 585 A.2d 42, 45 (Pa. Super. 1991). When the trier of fact has determined the intent of the parties to a contract, an appellate court will defer to that determination if it is supported by the evidence. **Id.**

---

[7] As stated in note 3, **supra**, the "consent forms" are dated July 9, 2016, and simply state that the adult children give "permission to the Trustee, Kenneth R. Schuster, to obtain a mortgage secured by the condominium . . . in the amount of $375,000." There is no indication in the consents that the children were consulted or consented to the encumbrance prior to the mortgage date. Moreover, neither of the adult children testified as to the authenticity of the forms.

Here, the court properly heard testimony from both Husband and Wife. The trial court found Wife's testimony credible, and, as stated above, found Husband's testimony not credible. ***See Mackay v. Mackay***, 984 A.2d 529, 533 (Pa. Super. 2009) (this Court must accept findings of trial court that are supported by competent evidence of record; with regard to issues of credibility and weight of evidence, this Court must defer to trial judge who presided over proceedings and thus viewed witnesses first hand). The court concluded that Wife's interpretation of the term consent was consistent with the objective meaning of word and term "consent," and consistent with the objective interpretation of what the parties intended that term to mean in the context of their agreement. This determination, too, is supported by the record. ***See Osial v. Cook***, 803 A.2d 209, 214 (Pa. Super. 2002) ("A contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense[;] when acting as the trier of fact, the court also resolves relevant conflicting parol evidence as to what was intended by the ambiguous provisions, examining surrounding circumstances to ascertain the intent of the parties.").

Husband next argues that the court was without jurisdiction to modify the terms of the PSA. Whether the trial court had jurisdiction to modify the terms of the parties PSA is a question of law. As such, our standard of review is *de novo*, and our scope of review is plenary. ***See Annechino v. Joire***, 946 A.2d 121, 123 n.3 (Pa. Super. 2008).

> A [settlement] agreement incorporated but not merged into the divorce decree survives the decree and is enforceable at law or equity. A settlement agreement between spouses is governed by the law of contracts unless the agreement provides otherwise.
>
>> Because contract interpretation is a question of law, this Court is not bound by the trial court's interpretation. Our standard of review over questions of law is *de novo* and to the extent necessary, the scope of our review is plenary as the appellate court may review the entire record in making its decision. However, we are bound by the trial court's credibility determinations.

*Stamerro v. Stamerro*, 889 A.2d 1251, 1257–58 (Pa. Super. 2005) (citations and quotations omitted). *See also Kraisinger v. Kraisinger*, 928 A.2d 333, 339 (Pa. Super. 2007) (when interpreting marital settlement agreement, trial court is sole determiner of facts; absent abuse of discretion, we will not usurp trial court's fact-finding function).

When construing agreements involving clear and unambiguous terms, this Court need only examine the writing itself to give effect to the parties' understanding. *Creeks v. Creeks*, 619 A.2d 754, 756 (Pa. Super. 1993). The court must construe the contract only as written and may not modify the plain meaning of the words under the guise of interpretation. *Id.* When the terms of a written contract are clear, this Court will not re-write it or give it a construction in conflict with the accepted and plain meaning of the language used. *Id.*

Here, the PSA specified that the court "shall retain the right to enforce the provisions and the terms of this [PSA], *but not to modify it*. *Id.* at ¶ 1(b) (emphasis added). Husband contends that the court modified the plain

meaning of the PSA, and that the PSA "does not require written authority from the children nor does it require that the children provide their consent prior to the property being encumbered." Appellant's Brief, at 13.

First, the court did not determine, nor did Wife argue in her petition for contempt, that prior *written* consent was required. Husband provided what he believed proved *subsequent* written consent in response to Wife's petition for contempt. The court simply determined that the PSA required prior consent of the adult children and that Husband had not established that. Husband did not present the testimony of the adult children to prove that they did, in fact, agree to the mortgage. Contrary to Husband's claim of error, the court did not modify the PSA; it merely interpreted the contractual language.

In this same argument, Husband claims that the court modified the PSA by imposing upon him, in its contempt order, additional restrictions and conditions. In particular, Husband claims the court modified paragraph 4(d) of the PSA, which permitted Husband to "encumber, mortgage or sell the [Condo] with consent of the parties' adult children and in accordance with the terms of the Trust," PSA, 3/12/13, at 4(d), when it ordered that: "Husband is prohibited from further encumbering, mortgaging, selling, or otherwise interfering with the Condo[.]" Order, 12/21/16.

Husband is correct that the court's order does impose restrictions and additional responsibilities on Husband. However, the Divorce Code grants the courts full "equity power and jurisdiction" necessary to carry out the purpose of the statute. Section 3323(f) of the Divorce Code provides:

> **Equity power and jurisdiction of the court**.—In all matrimonial causes, the court shall have full equity power and jurisdiction and *may issue injunctions or other orders which are necessary to protect the interests of the parties or to effectuate the purposes of this part and may grant such other relief or remedy as equity and justice require against either party* or against any third person over whom the court has jurisdiction and who is involved in or concerned with the disposition of the cause.

23 Pa.C.S. § 3323(f) (emphasis added).

Under section 3323(f), the trial court is authorized to enter orders requiring either party to act or refrain from acting as equity and justice require. "[T]he parameters of the enforcement authority the General Assembly intended to give the trial courts," are ascertained "by considering the occasion and necessity for the enactment and the object the Legislature sought to attain in the statute." ***Annechino v. Joire***, 946 A.2d at 123. As this Court noted in ***Annechino***, the purpose of the 1988 amendments to Divorce Code was to *extend remedies, sanctions and vehicles of enforcement* to agreements covering certain matters ancillary to divorce. ***Id.*** at 124. In sum, the court's enforcement powers are broad; the trial had equitable power and jurisdiction to tailor its order to protect the purpose and intent of the parties' agreement. 23 Pa.C.S. § 3323(f).

Wife testified that it was the parties' intent to eventually bestow the Condo to the children, free and clear of any encumbrances. The court, as stated above, found Wife's testimony credible, and structured its order to carry out that purpose. We agree with the trial court that, under these circumstances, where it is clear that the parties intended that the Condo

remain free and clear of encumbrances for the children's benefit, and where Husband is in contempt of that agreement, "equity and justice" require the order restricting Husband's ability to further encumber the Trust property. *See id*.; *see also* 23 Pa.C.S. 3502(e)(5) (allowing trial court to require party to provide security); 23 Pa.C.S. § 3502(d) ("[w]here it is necessary to protect the interest of a party, the court may also direct the purchase of, and beneficiary designations on, a policy insuring the life or health of either party."); 23 Pa.C.S. § 3105(a) (parties to agreement regarding matters within jurisdiction of court under Divorce Code may use remedy or sanction set forth in Divorce Code to enforce agreement to same extent as though agreement had been order of court). Husband has overlooked the courts continuing jurisdiction and broad equity and enforcement powers, 23 Pa.C.S. § 3323(f), as well as the legislative intent in promulgating the amendments to the Divorce Code, "which include effectuating economic justice between the parties and insuring a fair and just settlement of the parties' property rights." *Annechino*, 946 A.2d at 123 (citing 23 Pa.C.S. § 3102). Having acted within the confines of the Divorce Code, we conclude that the trial court's resolution of this issue is not an abuse of discretion. *Annechino*, *supra*; *cf. Foley v. Foley*, 572 A.2d 6 (Pa. Super. 1985) (court retains equitable authority after divorce decree is entered to intercede upon petition to address economic injustice).

Next, Husband argues the trial court abused its discretion when it precluded his testimony that the parties' adult children verbally consented

with respect to the mortgage and his testimony as to what the Trust attorney stated. Wife's counsel objected, and the trial court properly sustained the objections as hearsay. *See* Pa.R.E. 801(c) (defining "hearsay" as "a statement that (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement.").

Admission of evidence is within the sound discretion of the trial court and a trial court's rulings on the admission of evidence will not be overturned absent an abuse of discretion or misapplication of law. *Schuenemann v. Dreemz, LLC*, 34 A.3d 94, 100–101 (Pa. Super. 2011). An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused. *Id.*

Here, Husband claims his statements as to what the parties' adult children told him were not offered to prove the truth of the matter asserted, but rather were offered to prove his state of mind. He also contends that his testimony as to what the Trust attorney told him was also offered to prove his state of mind. Husband argues these statements proved that he believed he had complied with the terms of the PSA. This claim is meritless.

At the contempt hearing, the sole issue before the court was that of the adult children's consent. Whether Husband subjectively believed that he had done all that was necessary to comply with the parties' agreement was not at

issue and was, therefore, irrelevant. We find no error or abuse of discretion. ***Schuenemann***, ***supra***.

Finally, Husband argues the court erred in dismissing his counter-petition for contempt; he claims that Wife, in violation of the terms of the PSA, obtained a credit card in his name without his knowledge. ***See*** PSA, ***supra*** at ¶ 11(c). The court heard testimony from both Husband and Wife on this issue. Wife testified that Husband was standing right next to her when she completed the application and, despite Husband's testimony otherwise, the court determined that Wife's testimony that she has been making monthly payments on the credit card and has not asked Husband to pay the credit card was credible. ***Hyle***, ***supra***. As such, the court's finding that Wife was not in contempt and the dismissal of Husband's counterclaim for contempt was not an abuse of discretion. ***Id.***

Order affirmed.

Judge Platt joins the Memorandum.

Judge Bowes files a Concurring and Dissenting Memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/22/18

- 20 -